2000 UT 88

STATE of Utah, Plaintiff and Petitioner,

v.

Brad VISSER, Defendant
and Respondent.

No. 990257.

Supreme Court of Utah.

Nov. 14, 2000.

Jan Graham, Att'y Gen., Joanne C. Slotnik, Asst. Att'y Gen., Salt Lake City, Craig Halls, Monticello, for plaintiff.

Margaret H. Olson, Salt Lake City, for defendant.

DURRANT, Justice:

¶ 1 Brad Visser entered a guilty plea in the middle of his trial for aggravated sexual assault. Visser later sought to withdraw his plea, claiming the trial judge had not strictly complied with Utah Rule of Criminal Procedure 11(e). The trial court denied Visser's motion. Visser appealed and the court of appeals reversed. We reverse the court of appeals and remand.

## BACKGROUND

¶ 2 The State of Utah charged Brad Visser with aggravated sexual assault. Visser was seventeen years old at the time of the alleged incident. After a preliminary hearing, the juvenile court certified Visser as an adult and bound him over to the district court pursuant to the Serious Youth Offender Act.

¶ 3 On the eve of trial, two key defense witnesses decided not to testify. Then, during cross-examination at trial, the alleged victim denied writing a note that Visser claimed she had written and that defense counsel had hoped to use for impeachment purposes. Defense counsel immediately asked for a recess. During the recess, defense counsel vigorously urged Visser to plead guilty to rape.

¶ 4 After the recess, the trial court conducted the following plea colloquy with Visser:

THE COURT: Now, Mr. Visser, you've had an hour to discuss this with your attorney. Is that enough time for you to make this decision?

VISSER: Yes, sir.

THE COURT: I need to make sure that you understand your legal and constitutional rights before I can permit you to plead guilty. Do you understand that you have the right to be presumed innocent?

VISSER: Yes, sir.

THE COURT: Do you understand that we were right in the process of having a trial. You have a right to continue that trial through to a jury verdict, ... which could be a verdict of acquittal of any charge or could be a conviction for aggravated sexual assault, or any one of the numbers of things in between, forcible sexual abuse, attempted rape, rape are all possibilities that the jury might reach. Do you understand that?

VISSER: Yes, sir.

THE COURT: Do you understand that you have the right to go through with that trial and—and you would have the right to see that trial is conducted fairly and properly?

VISSER: Yes, sir.

THE COURT: Do you understand that you would have the right to testify if you wanted, and you wouldn't have to testify if you didn't want to?

VISSER: Yes, sir.

THE COURT: Do you understand that if you elected not to testify, you would have the right to have the jury instructed that they're not to hold that against you, they're not to consider that as any evidence of guilt?

VISSER: Yes, sir.

THE COURT: Do you understand that you have the right to be present here in court as the witnesses testify against you and have your lawyer cross-examine them?

VISSER: Yes, sir.

THE COURT: Do you understand that we would make sure that your witnesses attend the trial?

VISSER: Yes, sir.

THE COURT: Do you understand that when you plead guilty, you give up all these rights because these are all associated with having a trial and you're not going to have a trial if you plead guilty. Do you understand that[?]

VISSER: Yes, sir.

¶ 5 At this point, the court began discussing the nature of the crime charged, the plea agreement that had been made with the State, and Visser's rights relating to appeal. The court then concluded the plea colloquy as follows:

THE COURT: Have you taken this decision of your own free will and choice?

VISSER: Yes, sir.

THE COURT: Very well. To the charge of rape, a first degree felony, what is your plea, guilty or not guilty?

VISSER: Guilty.

THE COURT: I find that the Defendant [Visser] is aware of his legal constitutional rights and that he is free to voluntarily waive those rights, that this is a knowing voluntary plea. I find, based on the evidence that I've heard today in his own allocution, that there is a factual basis for this plea. I order that the plea be entered.

¶ 6 The day after pleading guilty, Visser engaged new counsel and moved to withdraw his guilty plea. Visser argued that by failing to specifically advise him of his right to "a speedy public trial before an impartial jury," Utah R.Crim.P. 11(e)(3), the trial court had not complied with Utah Rule of Criminal Procedure 11(e). After hearing oral argument on the motion to withdraw, the trial court denied the motion. In a supplemental order [1] reaffirming its denial of the motion to withdraw the guilty plea, the trial court explained its reasoning as follows:

> The court intentionally departed from the usual colloquy ... in order to avoid confusing defendant. The trial had already started without any complaint from defendant about pretrial delay. Accordingly, that right had been delivered and was no longer something defendant had a right to receive in the future. To talk about a speedy trial might confuse defendant, so the court elected not to discuss his right which had already been received. Similarly, defendant was not advised that he had the right to an impartial jury because the jury selection process had ended without complaint from defendant. He had participated in it and discussed it with his attorney at some length. To advise him of this right, which had already been received, would have confused rather than enlightened. Instead, the court chose to point out to defendant his right to continue with the trial, and to ensure that it was properly conducted to its conclusion.

¶ 7 Visser appealed the trial court's ruling to this court, and we transferred the appeal to the court of appeals pursuant to Utah Code Ann. § 78-2-2(4) (1996). Before the court of appeals, Visser argued that the trial court had failed to comply with rule 11, mandating reversal of the court's refusal to allow him to withdraw his plea. Visser also argued that he was incompetent at the time he entered his plea, that he was deprived of effective assistance of counsel, and that he was denied due process of law. In a 2–1 decision, the court of appeals reversed the trial court based solely on the rule 11 strict compliance issue. *See State v. Visser,* 1999 UT App 019, 973 P.2d 998.

¶ 8 In the lead opinion, Associate Presiding Judge Greenwood held that despite the midtrial context of the plea, strict compliance with rule 11 required that a trial court specifically inform the defendant of his right to a speedy trial before an impartial jury. *See id.* ¶¶ 16–18. In a concurring opinion, Presiding Judge Wilkins agreed with Judge Greenwood's conclusion that the trial court had failed to comply with rule 11.[2] *See id.* ¶ 23 (Wilkins, P.J., concurring). In dissent, Judge Bench argued that the trial court had adequately advised Visser of his rule 11 rights under the circumstances. The State petitioned this court for a writ of certiorari, which we granted.

## STANDARD OF REVIEW

 ¶ 9 On certiorari, we review the court of appeals' decision for correctness. *See Bear River Mut. Ins. Co. v. Wall,* 1999 UT 33, ¶ 4, 978 P.2d 460. The correctness of the court of appeals' decision turns on whether that court accurately reviewed the trial court's decision under the appropriate standard of review. *See Newspaper Agency Corp. v. Auditing Div.,* 938 P.2d 266, 267 (Utah 1997). Whether the trial court strictly complied with rule 11 is a question of law, reviewed for correctness. *See State v. Benvenuto,* 1999 UT 60, ¶ 10, 983 P.2d 556. The trial court's underlying factual findings are reviewed for clear error. *See id.*

---

1. Visser objected to certain aspects of the trial court's initial order, thus prompting the court to issue a supplemental order that the court used "to explain more fully the basis for its decision that Rule 11 was strictly satisfied."

2. Judge Wilkins' reasoning varied somewhat from that of the lead opinion, however. In his view, the trial court had used "perfectly adequate language to explain to this defendant, under the circumstances, those legal concepts encompassed by the provisions of Rule 11(e)." *Visser,* 1999 UT App 019, ¶ 23, 973 P.2d 998 (Wilkins, P.J., concurring). He nevertheless concluded that reversal was appropriate because in his assessment the record did not reflect "the trial court's belief that he had covered each of these rights in a manner sufficient for the defendant to understand them." *Id.*

## ANALYSIS

¶ 10 Utah Rule of Criminal Procedure 11(e) states, in pertinent part, that a court may not accept a guilty plea until the court has found that

(3) the defendant knows of the right to the presumption of innocence, the right against compulsory self-incrimination, the right to a speedy public trial before an impartial jury, the right to confront and cross-examine in open court the prosecution witnesses, the right to compel the attendance of defense witnesses, and that by entering the plea, these rights are waived.

¶ 11 Our case law construing this requirement has stated that trial courts bear the burden of ensuring compliance with this rule. *See State v. Gibbons,* 740 P.2d 1309, 1312, 1313 (Utah 1987); *see also State v. Hoff,* 814 P.2d 1119, 1122 (Utah 1991). This means "that the trial court [must] personally establish that the defendant's guilty plea is truly knowing and voluntary and establish *on the record* that the defendant knowingly waived his or her constitutional rights." *State v. Abeyta,* 852 P.2d 993, 995 (Utah 1993); *see also Hoff,* 814 P.2d at 1122. We have described the court's duty in this regard as a duty of "strict" compliance. *See, e.g., State v. Thurman,* 911 P.2d 371, 372 (Utah 1996); *Abeyta,* 852 P.2d at 995. Strict compliance, however, does not mandate a particular script or rote recitation of the rights listed. *See Abeyta,* 852 P.2d at 996; *State v. Maguire,* 830 P.2d 216, 218 (Utah 1991). We thus reemphasize that the substantive goal of rule 11 is to ensure that defendants know of their rights and thereby understand the basic consequences of their decision to plead guilty. That goal should not be overshadowed or undermined by formalistic ritual.

¶ 12 The findings mandated by rule 11 "may be based on questioning of the defendant on the record or, if used, an affidavit reciting these factors after the court has established that the defendant has read, understood, and acknowledged the contents of the affidavit." Utah R.Crim.P. 11(e)(8). Although this portion of the rule describes the fundamental bases for the court's findings of knowing waiver—direct questioning or an affidavit—the rule is stated permissively and thus does not prevent a court from taking into account other record factors in making its findings. Indeed, we have held that "strict compliance can be accomplished by multiple means," including "the contents of other documents such as the information, presentence reports, exhibits, etc.," as long as "no requirement of the rule is omitted and so long as the record reflects that the requirement has been fulfilled." *Maguire,* 830 P.2d at 218.

¶ 13 The court of appeals ruled that the trial court failed to strictly comply with rule 11 by not specifically informing Visser of his right to a speedy trial before an impartial jury. *See Visser,* 1999 UT App 019, ¶ 19, 973 P.2d 998. We reverse and hold that the trial court's colloquy, in light of the mid-trial context of the plea, provided an adequate basis in the record to conclude that the trial court strictly complied with rule 11. Strict compliance does not require a specific method of communicating the rights enumerated by rule 11. As noted above, we have upheld the use of numerous methods of communication for rule 11 purposes. *See Maguire,* 830 P.2d at 217–18. In the particular circumstances of this case, we conclude that the "record reflects that the [rule 11] requirement[s] ha[ve] been fulfilled." *Id.* at 218. Specifically, the record details Visser's personal trial experience up to the point of his plea agreement. We conclude that this experience communicated at least as much as would the mere oral recitation of the "right to a speedy public trial before an impartial jury."

¶ 14 Visser's trial had already begun. As there is no allegation that the commencement of the trial or its proceedings to that point were not timely, we must assume that Visser had already actually received the essential benefit of his right to a speedy trial. Although we have found that there are other discrete aspects to the right to a speedy trial, such as the right to a prompt sentencing, *State v. Banks,* 720 P.2d 1380, 1385 (Utah 1986), we have never held that the individual aspects of the speedy trial right must be separately communicated. Hence, the recitation, either orally or by affidavit, that Visser had the "right to a speedy trial," would have

communicated no more than his actual trial experience to that point.[3]

¶ 15 Consequently, the trial court's modification of the colloquy to fit the peculiar circumstances of the case fulfilled the court's duty to "personally establish that the defendant's guilty plea [was] truly knowing and voluntary." *Abeyta,* 852 P.2d at 995. In the instant case, the trial court informed Visser that "we were right in the process of having a trial" and informed him that he had "a right to continue that trial through to a jury verdict." Then the court reemphasized Visser's "right to go through with that trial." Visser stated that he understood these rights. We thus hold that the court of appeals erred in reversing the trial court's holding that the colloquy, coupled with Visser's experience to that point, had provided Visser with an understanding of his right to a speedy trial and the fact that he would be sacrificing that right by pleading guilty.

¶ 16 Similarly, by virtue of his actual trial experience, Visser had first-hand knowledge of the method of ensuring the right to a trial by an impartial jury. The trial court found that "Visser was present when the jury was selected [and] that he participated in the selection process ... by asking questions regarding the jurors." Visser raised no allegations that the empaneled jury was biased in any way. As with Visser's speedy trial right, we conclude that the experience of witnessing and participating in jury selection communicated the manner of providing an impartial jury in a more tangible way than could mere words. Further, as noted, the trial court informed Visser that he had the right to continue with the trial and would "have the right to see that that trial is conducted fairly and properly." This communication, coupled with Visser's trial experience to that point, fulfilled the court's obligation to ensure that Visser understood his right to trial by an impartial jury before he gave up that right and pled guilty.

¶ 17 In conclusion, we hold that Visser's direct experience relative to his right to a speedy trial before an impartial jury, coupled

with the trial court's explanation that this right was a continuing one, provided adequate record support for the trial court's conclusion that Visser knew of the right and understood that by pleading guilty he would waive it. We reverse and remand to the court of appeals for consideration of the other issues Visser raised before that court.

¶ 18 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Judge HANSEN concur in Justice DURRANT'S opinion.

¶ 19 Having disqualified himself, Justice WILKINS does not participate herein; District Judge DARWIN C. HANSEN sat.

---

**3.** To hold otherwise would require trial courts to communicate more information mid-trial than prior to trial, which is a result that is certainly

not required by rule 11 or any of our prior case law.