2003 UT App 261

STATE of Utah, Plaintiff and Appellee,

v.

Liza Victoria CORWELL, Defendant and Appellant.

No. 20020343–CA.

Court of Appeals of Utah.

July 17, 2003.

Kent R. Hart and Patrick L. Anderson, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Kenneth A. Bronston, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges JACKSON, GREENWOOD, and THORNE.

## OPINION

JACKSON, Presiding Judge:

¶ 1 Liza Corwell appeals from the trial court's denial of her motion to withdraw her guilty plea from a conviction for attempted tampering with evidence in violation of Utah Code Annotated §§ 76–8–510 and 76–4–101 (1999). We reverse and remand.

## BACKGROUND

¶ 2 On March 13, 2001, Detectives Troy Anderson and Tracy Ita of the Salt Lake City Police Department investigated a report that Corwell and Rebecca Champneys might be "using and/or selling narcotics" at a motel. The informant specifically directed the detectives to room number 236 at the Motel 6, located at 1990 West North Temple Street in Salt Lake City.

¶ 3 Based on this information, the detectives went to the motel room and knocked on the door. Detective Ita identified himself as "Tracy" and, after Champneys expressed some confusion, Ita responded that he was "Tracy with the Salt Lake City Police Department." Then both officers displayed their badges—Ita through the peep hole in the door and Anderson through an adjoining window. Anderson testified that there was a "six to twelve" inch gap between the curtain and the door through which he could see into the room. When the detectives asked if Corwell was also in the room, Champneys initially responded negatively. She later admitted that Corwell was in the room, however, after Anderson observed another woman in the room.

¶ 4 After the detectives displayed their badges and asked Champneys to open the door, Champneys attempted to close the gap in the curtains. At the same time, Anderson saw Corwell put what he thought was a crack pipe into a purse and put it behind the bed. Anderson then observed "a lot of movement in the room," including trips to the bathroom by both women and efforts to conceal objects under the bed.

¶ 5 The detectives repeatedly asked Champneys to open the door. When she refused, Ita obtained a key from the motel manager. Even with the key, however, the detectives were unable to enter the room because the women had dead-bolted the door. Detective Ita then kicked the door open.

¶ 6 Once inside the room, Anderson arrested Champneys and Corwell. A search of Champney turned up a metallic pipe, which she admitted she used to smoke cocaine. He also discovered cocaine, Kleenex, and a burnt Brillo pad. A search of Corwell revealed a rock of cocaine and drug paraphernalia. While being searched in the bathroom, Champneys grabbed some cocaine from the counter and tried to flush it down the drain.

¶ 7 On September 19, 2001, the trial court denied Corwell's motion to suppress. On December 7, 2001, Corwell entered a conditional guilty plea to attempted tampering with evidence, reserving her right to appeal the trial court's ruling on the suppression motion. Though both the plea statement and the trial court's questioning omitted the word "speedy" from the discussion of Corwell's rights, the trial court did inform Corwell that by pleading guilty she was giving up her right to a trial before an impartial jury, and that her trial was scheduled for the following Monday.

¶ 8 On April 2, 2002, judgment was entered. On April 26, 2002, Corwell filed a notice of appeal. However, on April 29, Corwell moved to withdraw her guilty plea. On June 5, 2002, Corwell filed a motion and memorandum "to hold appeal in abeyance and to stay the briefing schedule pending disposition of motion to withdraw guilty plea." In her motion, Corwell stated that if the trial court denied her motion to withdraw her guilty plea, she planned to appeal the denial of the motion to this court and would then request that this court consolidate her appeals from her conviction and the denial of her motion.

¶ 9 On June 20, this court stayed the appeal and temporarily remanded the case, directing the trial court to rule on Corwell's motion to withdraw her guilty plea. In granting the stay, this court stated: "If the trial court denies the motion, Appellant shall file an amended notice of appeal under the same appellate case number." On June 21, the trial court denied the motion. On September 10, Corwell filed a supplemental designation of record, a supplemental certificate, and a supplemental request for transcript. The final order was not entered until October 11, 2002. On October 28, 2002, Corwell filed an amended notice of appeal of the trial court's denial of her motion to withdraw the guilty plea.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 10 Corwell challenges the trial court's denial of her motion to withdraw her guilty plea. Specifically, Corwell challenges the trial court's compliance with rule 11 of the Utah Rules of Criminal Procedure in taking her guilty plea. Whether the trial court strictly complied with rule 11 is a question of law, which we review for correctness. *See State v. Benvenuto*, 1999 UT 60, ¶ 10, 983 P.2d 556 ("the . . . question of whether the trial court strictly complied with constitutional and procedural requirements for entry of a guilty plea is a question of law that is reviewed for correctness" (quoting *State v. Holland*, 921 P.2d 430, 433 (Utah 1996))).

## ANALYSIS

■ ¶ 11 Corwell challenges the trial court's denial of her motion to withdraw her guilty plea, arguing that the trial court failed to strictly comply with rule 11's requirements that she be informed of her right to a speedy trial and that her guilty plea would limit her right to appeal.[1]

---

1. Corwell also argues that the police did not have probable cause to search her hotel room. This

¶ 12 It is well established that rule 11's requirements must be strictly complied with by trial courts. Rule 11(e) "squarely places on trial courts the burden of ensuring that constitutional and rule 11(e) requirements are complied with when a guilty plea is entered." *State v. Gibbons*, 740 P.2d 1309, 1312 (Utah 1987). This duty requires "strict compliance" with the rule, *State v. Abeyta*, 852 P.2d 993, 995 (Utah 1993), which means " ' "that the trial court [must] ... establish on the record that the defendant knowingly waived his or her constitutional rights [to a] speedy public trial before an impartial jury." ' " *State v. Dean*, 2002 UT App 323, ¶ 10 n. 2, 57 P.3d 1106 (quoting *State v. Visser*, 2000 UT 88, ¶¶ 10–11, 22 P.3d 1242 (quoting Utah R.Crim. P. 11(e))).

¶ 13 In *Visser*, however, the Utah Supreme Court held that the strict compliance rule does not "mandate a particular script or rote recitation of the rights listed." *Visser*, 2000 UT 88 at ¶ 11, 22 P.3d 1242. Instead, the rule requires that the trial court ensure that defendants know their rights and the consequences for waiving them by pleading guilty. *See id.* While the trial court must therefore make certain that "no requirement of the rule is omitted," *id.* at ¶ 12, the court is allowed to rely on the circumstances of the case to determine whether the defendant has been appraised of his or her rights. *See id.*

¶ 14 The facts of *Visser* are instructive. In *Visser*, the defendant entered a guilty plea in the middle of his trial. *See id.* at ¶ 1. He later filed a motion to withdraw his plea, arguing that the trial court had failed to inform him of his constitutional right to a speedy trial before an impartial jury. *See id.* The trial court denied the motion. *See id.* at ¶ 6. On review, the supreme court concluded that " 'strict compliance can be accomplished by multiple means.' " *Id.* at ¶ 12 (quoting *State v. Maguire*, 830 P.2d 216, 218 (Utah 1991)). Thus, where " 'the contents of other documents such as the information, presentence reports, exhibits, etc.,' " indicate that

" 'no requirement of the rule [has been] omitted,' " the court's ruling will be deemed to have been in compliance with rule 11. *Visser*, 2000 UT 88 at ¶ 12, 22 P.3d 1242 (citations omitted). Accordingly, insofar as "the record detail[ed] Visser's personal trial experience up to the point of his plea agreement," the supreme court therefore "conclude[d] that this experience communicated at least as much as would the mere oral recitation of the 'right to a speedy public trial before an impartial jury.' " *Id.* at ¶ 13.

¶ 15 The present case presents a scenario significantly different from that presented in *Visser*. Whereas Visser's mid-trial status evidenced a clear understanding of his right to a speedy trial, Corwell's trial had not yet started at the time of her plea. Thus, she was never afforded the right to a speedy trial, and no such right was communicated to her in the colloquy. It is true that the trial court did note that Corwell's case was set for trial the following Monday. We conclude, however, that this mention did not effectively communicate to Corwell that she had a right to a speedy trial. Modern trial practice is replete with opportunities for delay, postponement, or continuance. Without more, the mere mention of an *imminent* trial date is not sufficient to satisfy rule 11's requirement that a defendant be apprised of the right to a *speedy* trial.

¶ 16 This conclusion is supported by our prior case law. In *State v. Hittle*, we concluded that omitting the word "speedy" constituted plain error because "the constitutional right to a speedy trial is a distinct right of criminal defendants, separate from the right to a trial before an impartial jury." 2002 UT App 134, ¶ 8, 47 P.3d 101. "If the defendant is not fully informed of his [or her] rights prior to pleading guilty, then the guilty plea cannot be voluntary." *Id.* at ¶ 10. Although the term "speedy" "may be communicated by various means to the defendant, [it] may not be considered [a] merely incon-

exact issue was previously addressed by this court in an appeal filed by Corwell's co-defendant. *See State v. Champneys*, Case No. 20020123, 2003 WL 21290158 (Utah Ct.App. March 27, 2003). Under the terms of *State v.*

*Ellis*, 969 P.2d 1053 (Utah Ct.App.1998), the law of the case doctrine renders *Champneys* binding on us for the purposes of Corwell's appeal. Accordingly, we decline to address the issue.

sequential modifier[ ] to the jury trial right." *Dean*, 2002 UT App 323 at ¶ 10 n. 2, 57 P.3d 1106. Here, nothing in the record suggests that the trial court established that Corwell waived anything more than her right to a lengthy and delayed trial.

¶ 17 The trial judge also failed to inform Corwell that her guilty plea limited her right to appeal. "By pleading guilty, the defendant is deemed to have admitted all of the essential elements of the crime charged and thereby waives all non-jurisdictional defects, including alleged pre-plea constitutional violations." *State v. Parsons*, 781 P.2d 1275, 1278 (Utah 1989). The trial judge and the plea statement merely informed Corwell that she could appeal the denial of her motion to suppress under *State v. Sery*, 758 P.2d 935 (Utah Ct.App.1988). However, the trial court's only clarification of this right was, "so everybody is clear on that, it means you can appeal it." "It" was never sufficiently explained. Likewise, it was defense counsel that acknowledged the court's "clarification." Just as a jury trial is a separate and distinct right from the right to a speedy public trial, the limits on an appeal are separate from the right to appeal generally. *See Hittle*, 2002 UT App 134 at ¶ 8, 47 P.3d 101.

¶ 18 The State contends that by failing to include the right to a speedy trial and the provision concerning the limited right to appeal in the plea statement, and by failing to point out the omissions when the trial judge asked "if there was anything either one of you would have me ask your client regarding Rule 11 appointments," Corwell invited error. We disagree. "[I]t is not sufficient to assume that defense attorneys make sure that their clients fully understand the contents of the affidavit." *Gibbons*, 740 P.2d at 1313. The duty to ensure that defendants know and understand the rights they are surrendering when pleading guilty rests not on the parties, but on the trial court. *See id.* at 1312.

¶ 19 The State also claims that the trial court strictly complied with the rule 11 requirements insofar as Corwell was aware of the rights that were overlooked, and that the guilty plea was properly accepted. In his order denying Corwell's motion to withdraw her guilty plea, the trial judge conceded that he covered "most" of the rule 11 requirements and thus "substantially" complied with rule 11(e). However, case law requires "strict compliance with rule 11, rather than substantial compliance" when accepting a guilty plea. *See id.* at 1313–14; *see also Visser*, 2000 UT 88 at ¶ 11, 22 P.3d 1242; *Abeyta*, 852 P.2d at 995; *State v. Tarnawiecki*, 2000 UT App 186, ¶ 12, 5 P.3d 1222. The quantum of error is irrelevant; rather, strict compliance requires reversal in this case because the trial court failed to inform Corwell of two of her constitutionally protected rights. *See Tarnawiecki*, 2000 UT App 186 at ¶ 19, 5 P.3d 1222. Accordingly, the trial court did not strictly comply with rule 11(e), and it erred in denying Corwell's timely motion to withdraw her guilty plea.

## CONCLUSION

¶ 20 The trial court erred in denying Corwell's motion to withdraw her guilty plea because the trial court did not strictly comply with rule 11(e) during the plea colloquy. Accordingly, we reverse the denial of Corwell's motion to withdraw her plea, vacate her conviction, and remand for proceedings consistent with this opinion.

¶ 21 I CONCUR: PAMELA T. GREENWOOD, Judge.

THORNE, Judge, (concurring):

¶ 22 I concur with the decision to reverse the trial court's denial of Corwell's motion to withdraw her plea based on the trial court's failure to strictly comply with rule 11 of the Utah Rules of Criminal Procedure. However, absent the specific failures outlined in the majority opinion, I believe the plea colloquy was exemplary and the caution demonstrated by the trial court should be highlighted. During the colloquy, the trial court conducted an in-depth discussion with Corwell addressing virtually all of the rights due her in the criminal proceeding. The discussion ranged from the court's ensuring that Corwell had read and understood the pleading document prepared by counsel, to its explaining that, in pleading guilty, she was waiving

her right to a jury trial, her right to confront the State's witnesses, the presumption of innocence, and the State's duty to prove her guilty beyond a reasonable doubt. The court also explained to Corwell the range of possible sentences she faced should she accept the plea agreement.

¶ 23 Furthermore, it is clear from the record that the trial court understood that rule 11 does not envision nor require the recitation of a formulaic speech. Rather, the trial court understood that, under rule 11, its role was to conduct an actual inquiry into the nature and depth of the defendant's understanding of her rights and to ensure that her plea was entered in a knowing and voluntary fashion.

¶ 24 Finally, because the court accepted the plea pursuant to *State v. Sery,* 758 P.2d 935, 939 (Utah Ct.App.1988), and because the trial was scheduled to begin on the day following the plea hearing, the court's failure to strictly comply with rule 11 is understandable, albeit insufficient to satisfy our rule 11 jurisprudence.

¶ 25 Accordingly, I concur with the decision to reverse and remand the trial court's denial of Corwell's motion to withdraw her guilty plea.