2004-NMCA-124

100 P.3d 209

**Stephen R. WHITTINGTON, et al., Plaintiffs–Appellants,**

v.

**STATE of New Mexico DEPARTMENT OF PUBLIC SAFETY, John Denko, in his capacity as Secretary of the New Mexico Department of Public Safety, and Carlos Maldonado, in his capacity as Chief of the New Mexico State Police, Defendants–Appellees.**

**No. 24,376.**

Court of Appeals of New Mexico.

Aug. 27, 2004.

Certiorari Denied, No. 28,893, Oct. 20, 2004.

Richard F. Rowley II, Richard F. Rowley III, Rowley Law Firm, P.C. Clovis, NM, for Appellants.

Ellen Casey, S. Barry Paisner, Hinkle, Hensley, Shanor & Martin, L.L.P., Santa Fe, NM, for Appellees.

## OPINION

CASTILLO, Judge.

{1} This appeal requires us to review the trial court's entry of summary judgment against Plaintiffs on the one remaining count

in their complaint, that of breach of contract. We consider whether policies and procedures governing the employment of state police officers create an implied contract regarding terms of employment and, if so, whether the implied contract constitutes a "valid written contract," such that immunity is waived under the terms of NMSA 1978, § 37–1–23(A) (1976). We answer in the affirmative; however, the trial court must still determine the remaining issues. In this case, the trial court bifurcated consideration of the summary judgment motion into parts and postponed consideration of issues related to grievance procedures and the statute of limitations until after the contract issues were decided. It appears that the implied contract requires certain procedures to be followed when an employee believes a term of employment has not been followed and that these procedures do not contemplate direct suit to district court.[1] We do not reach this procedural issue in this opinion but confine our discussion to whether there is a valid written contract giving rise to a waiver of immunity. Accordingly, we reverse the trial court's summary judgment and remand for consideration of the remaining arguments in Defendants' motion for summary judgment.

## I. BACKGROUND

{2} This case has a long history. Plaintiffs are a large group of state police officers who originally filed this suit in 1996 against the State of New Mexico Department of Public Safety (Department), the Secretary of the Department (Secretary), and the Chief of the New Mexico State Police (collectively referred to as Defendants) for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219 (2000). The case was removed to federal court and then remanded to state court, based on the holding in *Seminole Tribe v. Florida*, 517 U.S. 44, 61–66, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), that the federal court did not have jurisdiction to hear FLSA claims against a state. Once back in district court, the Department moved to dismiss the employees' claims for violations of the FLSA, based on state sovereign immuni-

ty. This Court, holding that the Eleventh Amendment of the United States Constitution does not give Defendants sovereign immunity from suit in state court for violations of the FLSA, originally reversed the district court's decision to dismiss Plaintiffs' suit against Defendants. *See Whittington v. State Dep't of Pub. Safety*, 1998–NMCA–156, ¶ 16, 126 N.M. 21, 966 P.2d 188. Defendants appealed to the United States Supreme Court, which, based on its decision in *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), vacated the judgment. *See N.M. Dep't of Pub. Safety v. Whittington*, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999). We then withdrew our previous opinion and affirmed the decision of the district court dismissing the direct FLSA claims, as set forth in counts one, three, and four of Plaintiffs' second amended complaint. *Whittington v. State Dep't of Pub. Safety*, 2000–NMCA–055, ¶ 5, 129 N.M. 221, 4 P.3d 668. Because there was no final order as to Plaintiffs' claim for breach of contract, we noted that a disposition of the direct FLSA claims should not be understood as precluding Plaintiffs "from asserting in the context of Count II that the written employment policies of the Department constitute a contract within the scope of NMSA 1978, § 37–1–23 (1976)." *Id.*

{3} Count two sets forth Plaintiffs' claim for breach of contract. On November 4, 2002, Defendants filed a motion for summary judgment on count two, together with a comprehensive memorandum containing several arguments. In response, Plaintiffs filed a motion for an extension of time to respond to the motion and to submit affidavits and a memorandum. At the hearing on Plaintiffs' motion, the trial court bifurcated the summary judgment motion into two parts. In part one, the parties were directed to address the existence of an enforceable contract concerning compensation arising out of the Department's policies and procedures, as well as the effect of such a contract on the immunity issue. The trial court ruled that if Defendants were unsuccessful in this part of their motion, a status conference would be

---

1. We say "appears" because pages 2 and 4 of the Grievance Policy and page 2 of the General Grievance Procedure are not included in the record. These policies are not germane to the issues we consider in this opinion.

convened to determine if further discovery was necessary to enable Plaintiffs to respond to Defendants' remaining arguments. These arguments relate to the issues of whether Plaintiffs are bound by the grievance and appeals procedure set out in the Department's policies and procedures and whether Defendants are entitled to summary judgment on all contract claims for overtime compensation that occurred prior to September 16, 1995.

{4} On August 25, 2003, the trial court entered an order granting summary judgment on count two of Plaintiffs' complaint. In the order, the trial court assumed that the policies and procedures issued by the Department created an implied employment contract, pursuant to *Garcia v. Middle Rio Grande Conservancy District*, 1996–NMSC–029, 121 N.M. 728, 918 P.2d 7. Based on this assumption, the trial court explicitly rejected the argument that an implied employment contract only extends to termination of employees. The trial court noted that there are two exceptions to the general rule of at-will employment in New Mexico: the tort of retaliatory discharge and an implied contract term that restricts the employer's power to discharge. Relying on the New Mexico Supreme Court's decision in *Silva v. American Federation of State, County and Municipal Employees*, 2001–NMSC–038, 131 N.M. 364, 37 P.3d 81, the trial court held that a cause of action for breach of an implied contract for overtime compensation is available only to at-will employees. There is no dispute that New Mexico state police officers are by statute not at-will employees. As a consequence, the trial court granted the summary judgment, holding that Plaintiffs "may not utilize an exception to the at will employment rule to pursue claims against Defendants."

## II. DISCUSSION

### A. Standard of Review

{5} While it appears that there is a dispute as to whether the policies were distributed to Department personnel or not, Defendants concede that this dispute is not a material fact relevant to the appeal. We agree and conclude that there are no material facts in dispute. Our review, therefore, is de novo. *Barreras v. State Corr. Dep't*, 2003–NMCA–027, ¶ 5, 133 N.M. 313, 62 P.3d 770 (stating that the court applies a de novo standard of review when issues on appeal present questions of law arising out of undisputed facts).

### B. Implied Contract

#### 1. Manual

{6} The policies that Plaintiffs allege were breached are attached to Defendants' memorandum. They relate to overtime compensation, jury and witness fees, holiday compensation and duties, and physical fitness time. Defendants attached as exhibits additional policies and procedures. During the hearing on the motion for summary judgment, Defendants agreed with the trial court that the Department's manual is much more extensive than the portions contained in the record. However, for purposes of this appeal, there is no dispute that the record contains those portions of the manual that are material to our decision and that those portions not included in the record are not necessary for a determination in this case. For ease of reference in this opinion, we will refer to policies that are contained in the record as the Manual and will rely on these documents in our analysis.

{7} It is well established that employee handbooks, personnel policy guides, and similar documents may constitute implied employment contracts. *Garcia*, 1996–NMSC–029, ¶ 11, 121 N.M. 728, 918 P.2d 7 (holding that an employee handbook may constitute an implied employment contract). The test to determine whether a document rises to the level of an implied contract is based on the degree of the parties' reliance on it: when the document controls the employer-employee relationship such that employees may reasonably rely on the document's provisions and may expect the employer to conform to the procedures it outlines, the terms of the document constitute the contract. *Id.* ¶ 11 ("[A] personnel manual gives rise to an implied contract if it control[s] the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures

it outlines." (internal quotation marks and citations omitted)).

{8} Defendants argue that the Manual contains general statements of policy and does not exhibit any of the elements of an express or implied contract. The trial court made no specific determination regarding the contract and "assumed" that the Manual constituted an employment contract under *Garcia*. Normally, the question of whether a manual modifies the employment relationship is "a question of fact to be discerned from the totality of the parties' statements and actions regarding the employment relationship." *Cockrell v. Bd. of Regents of N.M. State Univ.*, 2002–NMSC–009, ¶ 26, 132 N.M. 156, 45 P.3d 876 (quoting *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989) (internal quotation marks omitted)).

{9} Since this case comes to us on summary judgment, we review the undisputed facts as provided by the parties. In viewing the record, we note that Defendants did not provide with their motion any evidence that would support the conclusion that the Manual merely contains general statements of policy not binding on the parties. In a footnote in their supporting memorandum, Defendants refer to the affidavit of Albert R. Fugere, attached to their memorandum, in asserting that "[t]he Department's Policies and Procedures Manual is not distributed to employees but serves as a management document maintained by supervisors for their use in administering the operations of the Department." In the affidavit, Fugere, who is the Deputy Chief Counsel of the Department, states that as counsel for the Department since 1987, he is familiar with the "drafting, adopting and promulgating" of Department policies. Fugere explains that while employee approval is not required and the proposed policies are not subject to negotiation, proposed policies are routinely reviewed and commented on by administrators, supervisors, and staff. He states that the ultimate approval authority is with the Secretary and that once approved, a policy becomes "applicable to all DPS personnel." Thus, contrary to the assertion in the memorandum that the policies are merely maintained by supervisors for administrative purposes, Fugere's affidavit establishes that approved policies are to be followed by all Department personnel.

{10} Plaintiffs provided the affidavits of Richard Wesley Durham and Stephen R. Whittington, both of whom were New Mexico state police officers during the times material to this litigation. In his affidavit, Durham states that the Manual contains written policies and procedures that all Department employees are required to abide by, that failure to abide by the Manual has resulted in disciplinary action, that employees have been told that the Manual controls the employee-employer relationship, and that both supervisors and employees would be expected to comply with the policies and procedures. Whittington's affidavit is similar in content and states that "[a]ll employees were told that the Policies and Procedures Manual controlled the employer[-]employee relationship and [that] both parties would comply with those policies and procedures." Defendants provide no evidence to rebut these affidavits. From the record before us, it is undisputed that the Manual controls the employer-employee relationship such that employees may reasonably rely on the Manual's provisions and may expect the employer to conform to the procedures it outlines. *See Garcia*, 1996–NMSC–029, ¶ 11, 121 N.M. 728, 918 P.2d 7. Consequently, we agree with the trial court's assumption and conclude that the Manual does create an implied contract governing the terms of employment between the Department and Plaintiffs.

### 2. Consideration

{11} Citing to *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 671, 857 P.2d 776, 782 (1993), Defendants also argue that an implied contract dealing with employment terms other than termination must be supported by additional consideration; that in this case, the Manual was not the subject of negotiation or mutual assent; and that Plaintiffs provided no consideration for their promulgation. We disagree with this analysis.

[W]here there is proof of a promise sufficient to support an implied contract, the consideration sufficient to support the im-

plied contract will be implied as a matter of law by the court whether the promise was part of the original employment agreement or was made later in modifying the employment relationship.

*Id.* at 670, 857 P.2d at 781. When an employer issues a policy statement and, as in this case, encourages reliance on the policy by making it applicable to all personnel, the employer cannot selectively abide by it. *Lukoski v. Sandia Indian Mgmt. Co.*, 106 N.M. 664, 666–67, 748 P.2d 507, 509–10 (1988) (holding that an employer is certainly free to issue no personnel manual at all but that when an employer chooses to issue a policy statement that encourages reliance thereon, the employer cannot be free only to abide selectively by it). Each time a new policy is issued, that policy amends the employment relationship to the extent that the new policy creates new terms for each party to follow. Consideration is implied by the conduct of the parties.

### 3. Rights to Compensation

{12} Defendants rely on *Pierce v. State*, 1996–NMSC–001, ¶¶ 39–41, 121 N.M. 212, 910 P.2d 288, and *Whitely v. New Mexico State Personnel Board*, 115 N.M. 308, 312, 850 P.2d 1011, 1015 (1993), in arguing that statutes fixing compensation or terms of public employment merely enumerate public policy, subject to legislative revision, and do not create express or implied contractual rights. Both of these cases are distinguishable in that they pertain to the effect of an amended statute on the future rights of state employees or retirees. In the case at hand, Plaintiffs' claims for compensation are not based on statute; they are based on policies and procedures promulgated by the Department and in effect during the period for which compensation is claimed. Accordingly, the cited cases are not applicable in this instance.

### 4. Authority of the Secretary

■ {13} In their last argument on the contract issue, Defendants maintain that the Secretary of the Department has no authority to enter into the claimed implied contract and that "any such 'contract' " is therefore null and void ab initio. Defendants point to *Trujillo v. Gonzales*, 106 N.M. 620, 621–22,

747 P.2d 915, 916–17 (1987), and *Garcia*, 1996–NMSC–029, ¶ 17, 121 N.M. 728, 918 P.2d 7. In *Trujillo*, our Supreme Court held that under the Open Meetings Act, NMSA 1978, §§ 10–15–1 to –4 (1974, as amended through 1999), county commissioners had no authority to make an oral contract for employment and that the explicit terms of the county commission minutes controlled, as they reflected the final action of the commission appointing Trujillo as an at-will employee at a public meeting. *Trujillo*, 106 N.M. at 621–22, 747 P.2d at 916–17. In this case, we are not dealing with oral representations but rather a written Manual adopted pursuant to statute. NMSA 1978, § 9–19–6(E) (1989) (authorizing the Secretary to "make and adopt such reasonable and procedural rules and regulations as may be necessary to carry out the duties of the [D]epartment and its divisions"). In concluding that the Manual is a written contract for purposes of Section 37–1–23(A), we are mindful of the policy reasons set out in *Garcia* supporting the requirement of a valid written contract to waive immunity for contract actions against the state. One reason "stems from the fact that governmental entities cannot enter contracts that would either curtail their authority or otherwise fall outside of their designated powers"; and when parties "evidence[ ] their agreement in writing, courts may more easily determine whether the agreement is a 'valid' contract worthy of enforcement." 1996–NMSC–029, ¶ 17, 121 N.M. 728, 918 P.2d 7. The Manual provides the writing, and Section 9–19–6(E) provides the authority. The Secretary may adopt policies that form the basis of the implied contract in this case.

### C. Waiver of Immunity

■ {14} Defendants argue that even if there is an implied employment contract, only those implied employment contracts that serve to preclude at-will termination can be considered valid written contracts for purposes of waiving the State's immunity from suit under Section 37–1–23(A). We do not read New Mexico law so narrowly.

{15} We recognize that implied contracts often modify the at-will employment relation-

ship, but these same contracts may contain other terms related to the employer-employee relationship. In *Garcia*, the Court concluded that "the Personnel Policy comprehensively controls the employer-employee relationship in the MRGCD and that it creates a reasonable expectation for MRGCD employees that the MRGCD will follow the provisions contained within the Personnel Policy." *Garcia*, 1996–NMSC–029, ¶ 20, 121 N.M. 728, 918 P.2d 7. The Court did not limit the waiver of immunity to certain portions of the policy. Defendants' argument here is further eroded by the issue decided: the *Garcia* Court was not dealing with termination but rather with a challenge to the demotion policy. *Id.* ¶¶ 3, 12.

{16} Defendants argue that in *Campos de Suenos, Ltd. v. County of Bernalillo*, 2001–NMCA–043, 130 N.M. 563, 28 P.3d 1104, this Court "expressly refused to extend the implied contract doctrine outside the scope of the narrow exception to the at-will doctrine recognized in *Garcia*." Defendants misread our holding. In *Campos de Suenos*, we held that an implied-in-fact contract would not satisfy Section 37–1–23(A) because we refused an invitation to extend the rationale of our employment-related case law to a non-employment context. In the process, we did not limit the reach or meaning of cases like *Garcia*. To the contrary, we emphasized how important the implied-in-fact concept is in the public employment context. *Campos de Suenos*, 2001–NMCA–043, ¶¶ 27–28, 130 N.M. 563, 28 P.3d 1104. Nothing in *Campos de Suenos* can be read to limit the concept only to termination of employment.

{17} Defendants also cite to *Silva*, 2001–NMSC–038, 131 N.M. 364, 37 P.3d 81, to support their position. *Silva* holds that an employee who is not at-will cannot pursue an action for the tort of retaliatory discharge. *Id.* ¶ 12. The *Silva* Court affirmed that New Mexico recognizes two exceptions to the doctrine of at-will employment: breach of implied contract and retaliatory discharge. Thus, when an employee is already protected from wrongful discharge by an employment contract, the tort of retaliatory discharge is not applicable. *Id.* The issue of immunity was not considered, and we find no language

that would limit the *Garcia* holding to only those contracts that modify the at-will employment relationship.

{18} We have reviewed the several other cases argued by Defendants in their answer brief. These cases discuss implied contracts in general, as well as when an implied contract is considered a "valid written contract," thus waiving immunity. Section 37–1–23(A). Contrary to Defendants' assertion, we find no case that restricts waiver of immunity to only those implied employment contracts that modify the at-will status of employees. *See, e.g., Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002–NMSC–004, ¶¶ 21–24, 131 N.M. 607, 41 P.3d 333 (holding that the presumption of at-will employment was not modified by terms of the policy manual); *Handmaker v. Henney*, 1999–NMSC–043, ¶ 17, 128 N.M. 328, 992 P.2d 879 (upholding the trial court's determination that genuine issues of material fact regarding the terms of the employment contract precluded entry of summary judgment on the issue of immunity); *Mealand v. E. N.M. Med. Ctr.*, 2001–NMCA–089, ¶ 20, 131 N.M. 65, 33 P.3d 285 (basing reversal of summary judgment on finding that genuine issues of material fact remained regarding the terms of the handbook as to the employee's right to progressive discipline before determination).

### D. Trial Court's Determination

{19} In explaining the trial court's determination, Defendants divide public employees into two categories: those who can be fired at will (at-will employees) and those who can only be fired for just cause (just-cause employees). There is no dispute that Plaintiffs are just-cause employees. *See* NMSA 1978, § 29–2–11 (1999) (setting out the procedure for and the process for appealing the removal, demotion, and suspension of New Mexico police officers). Defendants contend the trial court correctly found that just-cause public employees do not have the right to sue their governmental employer for breach of an implied employment contract.

{20} The following is the pertinent part of the trial court's order:

It is undisputed that Plaintiffs are not at will employees. They may only be termi-

nated for just cause and may pursue an appeal of any termination without just cause in district court.... Thus, because Plaintiffs are not at will employees, they may not utilize an exception to the at will employment rule to pursue claims against Defendants.

In coming to the decision, the trial court relied on *Silva*, 2001–NMSC–038, 131 N.M. 364, 37 P.3d 81, and *Barreras*, 2003–NMCA–027, 133 N.M. 313, 62 P.3d 770. As we explained above, *Silva's* focus was on the appropriate cause of action in a wrongful discharge suit. *Barreras* made it clear that State Personnel Board rules together with a state agency handbook have "attributes of an employee contract" because they control the employer-employee relationship and give rise to reasonable employee expectations. *Barreras*, 2003–NMCA–027, ¶ 6, 133 N.M. 313, 62 P.3d 770 (internal quotation marks and citation omitted). The question in that case, however, was not whether an aggrieved employee had rights but rather how the rights are to be enforced. In *Barreras,* this Court held that a discharged state employee whose employment is governed by the State Personnel Act cannot bring a breach of contract action for wrongful termination in district court because the Act provides the exclusive remedy. *Id.* ¶ 21. Neither *Silva* nor *Barreras* contains the limiting language upon which the trial court premised its order.

{21} We acknowledge that the trial court was concerned about the interplay between Plaintiffs' employment rights as established by statute and those rights embodied in the Manual. We agree that *Barreras* may ultimately control this case. And it may be that in the end, the trial court will rule that the contract issues complained of by Plaintiffs are subject to the grievance policy contained in the Manual and that direct recourse to the district court is proscribed by Rule 1–075 NMRA (directing that appeal from a final decision of a governmental entity is by writ of certiorari to the district court when there is no statutory right to an appeal). We do not get to these issues, however, because the trial court bifurcated the motion for summary judgment and left any questions regarding the grievance procedure to be decided, if necessary, after determination of the first part of the motion.

## III. CONCLUSION

{22} We reverse the entry of summary judgment on the first part of Defendants' motion and remand for consideration of the issues in the second part of the motion, as per the trial court's order entered January 7, 2003.

{23} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.