2005 UT 60

**Machelle CANFIELD, Plaintiff and Petitioner,**

v.

**LAYTON CITY, a Utah Municipality, Defendant and Respondent.**

**No. 20040681.**

Supreme Court of Utah.

Sept. 16, 2005.

---

Brad C. Smith, Benjamin C. Rasmussen, Ogden, for plaintiff.

Stanley J. Preston, Camille N. Johnson, Judith D. Wolferts, Maralyn M. Reger, Ogden, for defendant.

---

DURHAM, Chief Justice:

¶ 1 Plaintiff, Machelle Canfield, appealed the district court's rule 12(b)(1) dismissal of her wrongful termination action against defendant, Layton City, for lack of subject matter jurisdiction. The court of appeals affirmed, noting that adherence to the notice of claim requirement of the Governmental Immunity Act of Utah (GIA), Utah Code Ann. §§ 63–30d–101 –802 (2004), is a prerequisite to a court's assertion of subject matter jurisdiction. *Canfield v. Layton City*, 2004 UT App 228U, ¶ 2, 2004 WL 1534208. The court determined that Ms. Canfield's complaint failed to plead a breach of contract claim, *id.* at ¶ 3, therefore, the GIA's notice requirement was not mailed. Utah Code Ann. § 63–30d–301(1)(a)–(b).

¶ 2 We granted certiorari to review whether the court of appeals correctly decided that Canfield's complaint was insufficient to plead a breach of contract claim. We conclude that the complaint sufficiently indicated a breach of contract claim to withstand Layton City's 12(b)(1) motion. We therefore reverse the court of appeals and remand to the district court to allow Canfield to amend her complaint to provide a more definite statement of her breach of contract claim.

## BACKGROUND

¶ 3 Canfield worked for Layton City as a police dispatcher for over thirteen years. Approximately six months prior to her alleged wrongful termination, Canfield was as-

signed a new supervisor. Her new supervisor often questioned her use of sick leave, which ultimately led to Canfield's resignation.

¶ 4 After her resignation, Canfield filed suit against her former employer in state court. Layton City removed the case to federal court on the assumption that Canfield was asserting an equal protection claim. The federal court ordered Canfield to file a second amended complaint to specifically identify any federal cause of action she was asserting. Canfield declined to amend, and her case was dismissed.

¶ 5 Canfield immediately refiled the same complaint in state court. The complaint states, in relevant part:

5. [The new supervisor] unfairly and unjustly scrutinized the work performance of Plaintiff.

. . . .

13. Plaintiff is informed and believes, and thereupon alleges, that numerous employees of [Layton] City have used sick leave in the same manner as Plaintiff but have not been subject to any disciplinary proceeding whatsoever. Accordingly, Plaintiff has been treated differently from and more severely than other employees of Defendant, all in contravention of Defendant's specific written policy.

14. Officers, employees, agents or servants of Defendant confronted Plaintiff with the allegation that Plaintiff misused sick leave and gave her an ultimatum that she resign from the City or face termination.

. . . .

16. Plaintiff is informed and believes and thereupon alleges that said individuals have not been punished as severely as she has, have not been terminated, or not given an ultimatum, but instead, were given employee warnings, probation, and other punishment.

17. Defendant's personnel policy specifically require[s] that Plaintiff be treated fairly and that any punishments or discipline given to her be proportionate to the offense alleged. Defendant's punishment of Plaintiff, including its termination of her, was disproportionate to the acts alleged, even if the acts were taken as true.

¶ 6 Upon commencement of the second action, Layton City filed a motion to dismiss pursuant to rule 12(b)(1) of the Utah Rules of Civil Procedure on the basis that Canfield failed to adhere to the notice requirement of the GIA, *id.* § 63–30d–401, citing our case law for the proposition that "[c]ompliance with the [GIA] is a prerequisite to vesting a district court with subject matter jurisdiction over claims against governmental entities," *Wheeler v. McPherson*, 2002 UT 16, ¶ 9, 40 P.3d 632.[1]

¶ 7 In opposition to Layton City's motion to dismiss, Canfield contended that her "complaint alleges a constructive termination and a violation of Layton City's written employment rules including rules regarding the proportionality of employee discipline, rules relating to consistency among termination, and related matters." Canfield further noted that because her complaint "sounds in contract," her claim is not subject to the GIA's notice requirement. *See* Utah Code Ann. § 63–30d–301.[2]

¶ 8 Rejecting Canfield's argument, the district court granted Layton City's motion to dismiss based on lack of subject matter jurisdiction. The court of appeals affirmed, concluding that "[e]ven a liberal reading [did] not permit [it] to view the complaint as alleging a claim based on implied contract, given the backdrop of case law suggesting that

1. Even though Canfield consistently refers to Layton City's motion as a 12(b)(6) motion for failure to state a claim, the record makes clear that we are reviewing a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

2. At the time Canfield filed her complaint, the applicable provision was found at Utah Code section 63–30–5(1) (2002). The GIA has since been amended and renumbered. The new provision for waiving the notice requirement for con-

tract claims is found at Utah Code section 63–30d–301. In revising the GIA, the Legislature indicated its intent that the previous version govern an allegation of injury that occurred before July 1, 2004. Act of Mar. 3, 2004, ch. 267, § 48, 2004 Utah Laws 1171, 1215. However, because the new provision is substantively identical to the previous version, we refer to the new provision here for the sake of convenience.

'public employees' employment rights *generally* spring not from contract, but from legislative policy.'" *Canfield,* 2004 UT App 228U at ¶ 3.

¶ 9 On certiorari, Canfield argues that her complaint sufficiently asserted a claim for breach of an implied employment contract and that she was therefore not subject to the notice requirement of the GIA.

## STANDARD OF REVIEW

■■■ ¶ 10 On certiorari, "we review the court of appeals' decision for correctness." *State v. Finlayson,* 2004 UT 10, ¶ 5, 84 P.3d 1193. We must determine whether the court of appeals accurately reviewed the decision of the district court "under the appropriate standard of review." *State v. Visser,* 2000 UT 88, ¶ 9, 22 P.3d 1242. Jurisdictional questions, such as subject matter jurisdiction, are reviewed for correctness. *Finlayson,* 2004 UT 10 at ¶ 5, 84 P.3d 1193.

## ANALYSIS

■■■ ¶ 11 The issue before this court is whether Canfield's complaint stated a claim for breach of an implied employment contract sufficient to avoid the notice requirement of the GIA.

■■■ ¶ 12 The GIA requires notice of a claim to be given to governmental entities within one year of the claim arising. Utah Code Ann. §§ 63–30d–401(2), –402. It is well established that failure to comply precisely with the notice requirement, where it applies, deprives the court of subject matter jurisdiction. *Greene v. Utah Transit Auth.,* 2001 UT 109, ¶ 16, 37 P.3d 1156. However, "[a]ctions arising out of contractual rights or obligations are not subject to the requirements of [the GIA]." Utah Code Ann. § 63–30d–301(1)(b). Therefore, a plaintiff who asserts a contract claim against a governmental entity need not file a notice of claim in order to vest a court with subject matter jurisdiction.

¶ 13 Here, Layton City contends that the notice requirement is applicable because Canfield did not assert a valid contract claim in her complaint. The City argues Canfield's complaint fails on its face to identify any contract or contractual obligation with Layton City and, further, that Canfield's claims cannot be contractual because her employment relationship with Layton City was, as a matter of law, governed by statute rather than contract.[3] We disagree on both points.

■■■ ¶ 14 A plaintiff is required, under our liberal standard of notice pleading, to submit a "short and plain statement ... showing that the pleader is entitled to relief" and "a demand for judgment for the relief." Utah R. Civ. P. 8(a)(1)-(2). The plaintiff must only give the defendant "fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." *Williams v. State Farm Ins. Co.,* 656 P.2d 966, 971 (Utah 1982) (internal quotation omitted). Furthermore, "when a complaint states a claim in general language but the factual allegations are so vague and ambiguous that the defendant cannot draft an answer, the proper course of action is to move for a more definite statement under rule 12(e), not to move for dismissal." *Whipple v. Am. Fork Irrigation Co.,* 910 P.2d 1218, 1222 n. 3 (Utah 1996). Motions for a more definite statement, however, are not generally favored, and should only be granted when the complaint is so "indefinite, ambiguous, or vague in either [its] factual allegations or [its] legal theory ... that the moving party cannot reasonably be required to frame his responsive pleading." *Liquor Control Comm'n v. Athas,* 121 Utah 457, 243 P.2d 441, 443 (1952).

¶ 15 Here, we conclude that, while Canfield's complaint is sufficiently vague that an order to amend is warranted, it does outline a breach of contract claim. We disagree with the court of appeals' conclusion that because employment rights for public employees generally spring from legislative policy, not contract, it is impossible to discern a

---

3. We do not consider Layton City's other arguments (failure to exhaust administrative remedies and res judicata) because "[r]eview on certiorari is limited to examining the court of appeals' decision and is further circumscribed by the issues raised in petitions." *Coulter & Smith, Ltd. v. Russell,* 966 P.2d 852, 856 (Utah 1998). Moreover, Layton City did not raise these arguments in its 12(b)(1) motion before the district court.

breach of implied contract claim in Canfield's complaint.

¶ 16 It is true that, generally, employment of public employees is "governed by statute, not contract." *Buckner v. Kennard*, 2004 UT 78, ¶ 32, 99 P.3d 842 (citing *Knight v. Salt Lake County*, 2002 UT App 100, ¶ 9, 46 P.3d 247; *Hom v. Utah Dep't of Pub. Safety*, 962 P.2d 95, 101 (Utah Ct.App. 1998)). However, this court has recognized that circumstances may exist where "the government voluntarily undertakes an additional duty" beyond its normal obligation to the employee, "in which case an implied contract arises." *Id.* (citing *Piacitelli v. S. Utah State Coll.*, 636 P.2d 1063, 1066 (Utah 1981)).

¶ 17 We have previously observed that an implied contract may "arise from a variety of sources, including the conduct of the parties, announced *personnel policies*, practices of that particular trade or industry, or other circumstances." *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989) (emphasis added). Additionally, other jurisdictions have found that employee manuals may create contractual obligations not subject to the governmental immunity notice requirements because "employees may reasonably rely on the document's provisions and may expect the employer to conform to the procedures it outlines." *Whittington v. State Dep't of Pub. Safety*, 136 N.M. 503, 100 P.3d 209, 212 (App.2004). It is thus theoretically possible that the personnel policy promulgated by Layton City created such expectations on Canfield's part.

¶ 18 The court of appeals' reliance on *Knight* for the contrary proposition is misplaced. At issue in *Knight* was whether Salt Lake County could force its employees to show up to work ten minutes early without pay. 2002 UT App 100 at ¶ 2, 46 P.3d 247. The employees introduced a series of documents as evidence of an implied contract, including an excerpt from the Salt Lake County Deputy Sheriff's Merit Service Commission Policies and Procedures Manual. *Id.* at ¶ 11. The court of appeals concluded that these documents did not alter or amend the terms or conditions of their employment. *Id.* at ¶ 18.

¶ 19 In reaching this conclusion, the court of appeals reviewed the impact of the County Personnel Management Act (CPMA), Utah Code Ann. §§ 17–33–1 to –15 (2001), which "sets forth [a][c]ounty's responsibility to establish an office of personnel management." *Knight*, 2002 UT App 100 at ¶ 12, 46 P.3d 247. The CPMA states that the office of personnel management shall "design and administer a county pay plan that includes salaries, wages, incentives, bonuses, leave, insurance, retirement, and other benefits." Utah Code Ann. § 17–33–1(c)(i). Based on the specific directions provided by this language, the court of appeals concluded that any employment-related policies set forth in county documents were "required or controlled by the Personnel Management Act and its implementing regulations." *Knight*, 2002 UT App 100 at ¶ 15, 46 P.3d 247. Thus, the county did not voluntarily undertake any obligation that was not mandated by state law. *Id.* at ¶ 14.

¶ 20 Here, the relevant statute, Utah Code section 10–3–815, differs significantly from the CPMA in that, rather than imposing specific obligations on cities in regard to their employees, it grants cities broad authority to set forth their own requirements. The statute states as follows:

> The governing body of each municipality shall prescribe rules and regulations which are not inconsistent with the laws of this state, as it deems best for the efficient administration, organization, operation, conduct and business of the municipality.

Utah Code Ann. § 10–3–815 (2003).

¶ 21 Unlike the CPMA, this provision does not specifically refer to personnel management, but instead empowers a municipal government to enact any rule or regulation it deems necessary in conducting municipal affairs. Essentially, this statute serves as an enabling provision, authorizing municipalities to set forth rules and regulations regarding their employees that may potentially create obligations towards employees in addition to those imposed by state law. Thus, Canfield may reasonably argue that Layton City voluntarily undertook additional obligations through its personnel policy.

¶ 22 Canfield alleges in paragraph thirteen of her complaint that other employees were treated less severely than she was, in contravention of Layton City's written policy. She also alleges, in paragraph seventeen, that Layton City's personnel policy requires employees to be "treated fairly and that any punishments or discipline given to [them] be proportionate to the offense alleged." In the same paragraph, Canfield claims that she was not treated in the manner required by the City's own personnel policy. Thus, Canfield's complaint may fairly be construed as claiming that Layton City voluntarily undertook an additional duty—to ensure Canfield was punished in proportion to the offense alleged and in uniformity with the treatment of other employees—and that Layton City breached that duty. Although inartfully drafted, the complaint thus contains a barebones outline of a breach of implied contract claim.[4]

¶ 23 We therefore conclude that Canfield's allegations sufficiently state a claim for breach of an implied employment contract, and that the GIA's notice requirement therefore does not apply. However, in order to provide Layton City with more specific notice regarding Canfield's contract claim, regarding, for example, which provisions of Layton City's personnel policy create the alleged obligations, we believe it appropriate to direct the district court to order Canfield to amend her complaint to provide a more definite statement of her claim.

## CONCLUSION

¶ 24 We hold that, under the applicable law, a municipal employer may create an implied employment contract through its personnel policies. Since Canfield's complaint alleges that Layton City acted in contravention of its personnel policies, we conclude that the complaint stated a claim for breach of contract sufficient to survive a 12(b)(1) motion to dismiss. We therefore reverse the court of appeals on that point. However, because Canfield fails to specify which policies she believes were violated, we direct the court of appeals to remand to the district court with instructions to order Canfield to amend her complaint to provide a more definite statement of her claim.

¶ 25 Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.

WILKINS, Associate Chief Justice, dissenting:

¶ 26 I dissent. I believe that the court of appeals correctly affirmed the ruling of the trial court dismissing Ms. Canfield's complaint against Layton City for lack of subject matter jurisdiction.

¶ 27 A careful reading of the refiled complaint upon which Ms. Canfield relies to raise a cause of action for breach of contract fails to disclose any hint of such a claim. Notice pleading, as practiced here, requires a short and plain statement of the claim. Ms. Canfield's complaint provides neither element of notice to Layton City. It is impossible, in my view, to parse the language of the complaint and conclude in any rational way that Layton City was given the required "fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." *Williams v. State Farm Ins. Co.*, 656 P.2d 966, 971 (Utah 1982).

¶ 28 The lead opinion, in a Herculean effort to find a hint of notice, works mightily to uncover the necessary plain statement of a contract claim, while at the same time noting that the complaint is "sufficiently vague" to warrant an order to amend. I concur that the complaint is sufficiently vague to warrant rewriting and re-submission. However, in addition to being vague, it also totally fails to make out any claim sounding in contract. The complaint is more than inartful. It is insufficient, even under our liberal interpretation of the requirements of pleading.

¶ 29 The trial court was correct to dismiss the complaint as it did, and the court of

---

4. We express no views, of course, on the availability of other defenses to the claim that may be raised before the district court.

appeals was also correct to affirm the action of the trial court. I would do the same.