167 P.3d 953 (2007)
2007-NMCA-125
Hillrey BEGGS, individually, Melvina Lancaster Crockett, individually, Jose M. Gutierrez, individually, Arly V. Hamner, individually, Pete O. Lucero, individually, Miguel S. Lucero, individually, Betty L. Olson, individually, Peggy Newbanks, individually, Ralph Pellicott, individually, Marcario Saiz, individually, Curtin Wagner, individually, Gary Watkins, individually, Alan Wofford, individually, Jim Wood, individually, Plaintiffs-Appellants,
v.
The CITY OF PORTALES, a municipality existing under the laws of the State of New Mexico, Defendant-Appellee.
No. 26,903.
Court of Appeals of New Mexico.
June 29, 2007.
Certiorari Granted September 17, 2007.
*955 Eric D. Dixon, Portales, NM, for Appellants.
Hinkle, Hensley, Shanor & Martin, L.L.P., Richard E. Olson, Rebecca Nichols Johnson, Roswell, NM, Doerr & Knudson, P.A., Stephen Doerr, Randy Knudson, Portales, NM, for Appellee.
Certiorari Granted, No. 30,558, September 17, 2007.

OPINION
PICKARD, Judge.
{1} Plaintiffs appeal from the district court's grant of summary judgment in favor of Defendant on Plaintiffs' petition for declaratory judgment and breach of contract claim. Plaintiffs are fourteen retired employees of Defendant City of Portales (City) who are challenging the City's decision to discontinue partial reimbursement of retiree health care insurance premiums. Below, the district court concluded that summary judgment was appropriate because Plaintiffs had no contractual or vested rights in the payment of retiree health insurance benefits. We agree and affirm.
BACKGROUND
{2} In 1994, the Portales City Council adopted revisions to the city personnel ordinance (also referred to as the personnel policy). Section 629 of the ordinance, entitled "RETIREE HEALTH CARE INSURANCE," indicated that the City would offer retired employees the option of continuing group health and life insurance coverage, provided that the retirees were enrolled in the group health plan at least one year prior to their retirement. Section 629 further provided that the City would pay the same percentage of the premium for the insurance as it was paying for current employees. Upon their retirement, all fourteen Plaintiffs elected to continue their group health insurance coverage through the City.
{3} Effective January 1, 2001, the City opted into the New Mexico Retiree Health Care Act, NMSA 1978, §§ 10-7C-1 to -19 (1990, as amended through 2006) (the Act), as a cost-saving measure. The City had originally opted out of the Act in 1990. As a condition of opting into the Act, the City paid nearly a quarter million dollars to cover the premiums for all of the employees during the period of time that the City did not participate. Even after opting into the Act, however, the City continued to reimburse its retired employees for health insurance premiums.
{4} On May 3, 2005, the City adopted a new personnel policy that omitted Section 629, which had previously provided for reimbursement of health insurance premiums for retirees. Plaintiffs, who had all retired prior to the adoption of the new policy, still continued to receive reimbursement for their health insurance premiums.
{5} Around the time of the City's decision to adopt the new personnel policy, there was some discussion regarding the propriety of the City's practice of paying retiree health insurance premiums. In August 2005, the City Council, by a vote of three to two, rejected a resolution prepared by the City attorney stating that the City's decision to opt into the Retiree Health Care Act effectively "terminated, canceled and rescinded Section 629 of the City of Portales Personnel Policy and other provisions pertaining to retiree health[ ]care insurance."
{6} Notwithstanding the defeated resolution, the City's position was that it was no longer obligated to pay retiree health benefits after May of 2005, if it indeed was permitted to pay them after electing to opt into the Retiree Health Care Act. The City soon began mailing letters to Plaintiffs informing them that the City would no longer reimburse Plaintiffs for their health insurance premiums. Plaintiffs filed a petition for declaratory judgment and for breach of contract on October 11, 2005. The district court granted the City's motion for summary judgment *956 on the grounds that Plaintiffs had neither a vested right nor a contractual right to reimbursement of health insurance premiums. This appeal follows.
STANDARD OF REVIEW
{7} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Self v. United Parcel Serv., Inc., 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." Roth v. Thompson, 113 N.M. 331, 334-35, 825 P.2d 1241, 1244-45 (1992) (citation omitted). On appeal, we review de novo whether the movant was entitled to judgment as a matter of law. See Self, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.
DISCUSSION
{8} On appeal, Plaintiffs contend that the district court erred in concluding that Plaintiffs had no contractual rights to the City's reimbursement of their health care insurance premiums. Plaintiffs assert that there are material issues of fact in dispute concerning the existence of an implied contract. Additionally, Plaintiffs argue that their right to reimbursement of health care insurance premiums is a vested right that could not be unilaterally terminated by the City. Finally, Plaintiffs assert that even if they do not have contractual or vested rights in the reimbursement of their insurance premiums, estoppel precludes the City from terminating their benefits. Addressing each issue in turn, we conclude that the district court properly granted summary judgment in favor of the City.
Contractual Rights and Vested Rights
{9} Although curiously not cited by either party in their briefs, we believe that our analysis in the present case is guided by Pierce v. State, 1996-NMSC-001, 121 N.M. 212, 910 P.2d 288. In Pierce, retired state employees sued the State of New Mexico after the legislature repealed "long-standing tax exemptions for state retirement benefits." Id. ¶¶ 1-2. In determining whether the district court properly granted summary judgment in favor of the State, the New Mexico Supreme Court recognized that it first had to decide whether the retirees had contractual or vested rights in their retirement benefits. Id. ¶ 17. The Court noted that if it concluded that retirees had contractual or vested rights in their retirement benefits, the next step would be to decide the scope of those rights. Id. ¶¶ 17, 45. Following this analysis, the Court in Pierce concluded that the retirees did not have contractual rights in their retirement benefits and also that the retirees did not have a vested right to a tax exemption for state retirement benefits. Id. ¶ 57.
{10} Although the present case involves a municipal ordinance, as opposed to a state statute, we follow the analysis described in Pierce in order to determine whether summary judgment was properly granted in favor of the City. Cf. Rutherford v. City of Albuquerque, 113 N.M. 573, 574, 829 P.2d 652, 653 (1992) ("In construing a municipal ordinance, we apply the same rules of construction that we use when construing a statute of the legislature."). Accordingly, we first consider whether Plaintiffs had a contractual right or a vested right in the City's reimbursement of retiree health insurance premiums. See Pierce, 1996-NMSC-001, ¶ 17, 121 N.M. 212, 910 P.2d 288. If either right exists, we then must decide the scope of the right. Id. We conclude that neither a contractual nor a vested right to health insurance benefits exists in the present case, and we therefore affirm the district court.
{11} "It is well established that statutes fixing the compensation or terms of public employment are presumed merely to establish public policy subject to legislative revision, and not to create contractual or vested rights." Whitely v. N.M. State Pers. Bd., 115 N.M. 308, 312, 850 P.2d 1011, 1015 (1993); see also Dodge v. Bd. of Educ., 302 U.S. 74, 79, 58 S.Ct. 98, 82 L.Ed. 57 (1937) ("[A] law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the [l]egislature *957 shall ordain otherwise."). The purpose of such a presumption
is to recognize that the function of a legislative body is to make laws that declare the policy of a governmental body, which laws are subject to repeal when a subsequent legislature decides to alter that policy. And because the legislature certainly would not countenance posing a possible contract clause violation every time it made a policy alteration, it stands to reason that unless the legislature has clearly evidenced that any of its laws were intended to create a contractual relationship, no such relationship exists.
Unterschuetz v. City of Chicago, 346 Ill. App.3d 65, 281 Ill.Dec. 367, 803 N.E.2d 988, 993 (2004). Thus, in order to find that Plaintiffs have a contractual or vested right to retiree health insurance benefits, Plaintiffs must demonstrate that the City clearly and unambiguously intended to create such rights in its personnel policy ordinance. See Pierce, 1996-NMSC-001, ¶ 18, 121 N.M. 212, 910 P.2d 288.
{12} As discussed in Pierce, the pertinent ordinance will only be found to confer a contractual right if the language of the ordinance "expressly so states, or the [ordinance] by clear and unambiguous terms indicates that the [City] specifically entered into a bargain with a party `in fact as found in their language or by implication from other circumstances, as affected by rules of law.'" 1996-NMSC-001, ¶ 17, 121 N.M. 212, 910 P.2d 288 (quoting 1 Arthur L. Corbin, Corbin on Contracts § 1.3, at 9 (rev. ed. 1993)). "We will not imply `a legislative intent to create private rights of a contractual nature enforceable against the [City].'" Id. (quoting Whitely, 115 N.M. at 312, 850 P.2d at 1015). We avoid implying private contractual rights against the City because doing so "would play `havoc with . . . the fundamental legislative prerogative to reserve to itself the implicit power of statutory amendment and modification.'" Id. ¶ 41, 850 P.2d 1011 (quoting Pineman v. Oechslin, 195 Conn. 405, 488 A.2d 803, 808 (1985)). As such, "the party asserting the creation of a contract must overcome this well-founded presumption, and we proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation." Studier v. Mich. Pub. Sch. Employees' Ret. Bd., 472 Mich. 642, 698 N.W.2d 350, 362 (2005) (internal quotation marks and citations omitted).
{13} Turning to the language of the ordinance itself, we observe that Section 629 provided the following:
The City of Portales shall offer employees upon their retirement the option of continuing their group health and life insurance coverage through the City's group plan, provided they are enrolled in the group health plan at least one year prior to retirement. The costs of the insurance for the retiree shall be the same as the cost for regular employees. If the City is paying 75% of the premium for employees, the City shall pay 75% of the premium for the retiree and shall be budgeted out of the department from which the employee retires. Retirees shall be responsible for paying their portion of the premium on a monthly, timely basis, in order to avoid the lapse of their policy coverage.
Conditions of the policy coverage shall apply in accordance with the retiree's age and circumstances on an individual basis.
Additionally, Section 1402, titled "AMENDMENTS," provided the following:
Changes in these rules may be proposed and a recommendation adopted at any regular or special meeting of the Personnel Board, but no recommendation shall be finally adopted except at a regular or special meeting open to the public and held no sooner than seven (7) days after the date the proposal was first proposed. A written notice of the meeting sent to each member in advance of such final consideration shall include a copy of any change proposed, and to be considered at such meeting.
Every recommendation in the rules adopted by the Personnel Board shall be submitted to the Portales City Council for its consideration and shall only go into effect when duly adopted by a majority vote of all Council members. An effective date may be established by City Council. Nothing shall restrict or prohibit the City Council from making changes in this *958 manual as it determines necessary at any time.

Id. (emphasis added).
{14} We do not believe that Section 629 conferred a contractual right upon Plaintiffs to receive retiree health insurance benefits. For one, there is no express language within the section creating private contractual rights or otherwise indicating that the City was entering into a bargain with Plaintiffs. See Pierce, 1996-NMSC-001, ¶ 30, 121 N.M. 212, 910 P.2d 288. Rather, the language of Section 629 seems to at best convey a policy decision by the City to allow retired employees the option of continuing with their health insurance coverage. Id. ¶ 48 ("We presume that statutes establish current public policy subject to legislative revision rather than creating either contractual or vested rights."). Had the City wanted to create a contractual right, it could have easily done so through the use of express contractual terms like "`contract,' `covenant,' or `vested rights.'" Studier, 698 N.W.2d at 363. In the absence of any such express language, it does not appear that the City intended to enter into a contract with Plaintiffs regarding retiree health insurance benefits.
{15} We disagree with the dissent's assertion that the use of the word "shall" in the ordinance indicates that the City intended to create private contractual rights. A review of the language used within the statutory provisions at issue in Pierce indicates that use of the word "shall" alone is not the type of clear and unambiguous language required to confer private contractual rights within a statute or ordinance. See Pierce, 1996-NMSC-001, ¶¶ 31-33, 121 N.M. 212, 910 P.2d 288 (citing statutes). Rather, we believe that stronger language is needed to overcome the presumption that statutes and ordinances do not create private contractual rights.
{16} Secondly, the fact that the ordinance may be altered or modified further indicates that the City did not intend to create contractual rights. See Pierce, 1996-NMSC-001, ¶ 33, 121 N.M. 212, 910 P.2d 288 ("That the legislature granted the board the right to modify benefits and payments is contrary to any intent to confer private contractual rights."). Moreover, "[i]n addition to the absence of contractual language, some federal courts, when interpreting statutes involving public-employee pension benefit plans, have expressed even greater reluctance to infer a contractual obligation where a legislature has not explicitly precluded amendment of a plan." Studier, 698 N.W.2d at 362. In the present case, nothing in Section 629 indicates that the City was precluded from amending the section. Moreover, Section 1402 expressly indicates that "[n]othing shall restrict or prohibit the City Council from making changes in this manual as it determines necessary at any time." Thus, in addition to the lack of express language creating contractual rights, the City's retention of the power to change its personnel policies further counsels against finding private contractual rights. See Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry., 470 U.S. 451, 467, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985) ("Indeed, lest there be any doubt in these cases about Congress' will, Congress `expressly reserved' its rights to `repeal, alter, or amend' the Act at any time. This is hardly the language of contract." (citation omitted)).
{17} Relying on a number of New Mexico cases dealing with private employers, Plaintiffs argue that there are disputed material facts concerning the existence of an implied contract. As observed by the court in Pierce, however, "[i]f the right to receive retirement benefits was conferred by a private rather than a public employer, we would imply contractual rights." 1996-NMSC-001, ¶ 41, 121 N.M. 212, 910 P.2d 288. "[T]here is a distinction traditionally made between private and public entities in determining the existence of contractual rights and obligations" and, as such, "[w]e decline to imply private contractual rights enforceable against the [City]." Id. We therefore do not believe that the implied contract cases cited by Plaintiffs are helpful to our analysis. It is for this same reason that we conclude that the cases relied on by the dissent involving contracts between private employers and their employees are simply not applicable to our analysis in the present case. Finally, we should not imply a contractual right to unchanged benefits when the contract expressly *959 provides that each of its provisions may be changed.
{18} In their reply brief, Plaintiffs contend that we should rely on implied contract cases involving public employers, including Handmaker v. Henney, 1999-NMSC-043, 128 N.M. 328, 992 P.2d 879, Garcia v. Middle Rio Grande Conservancy District, 1996-NMSC-029, 121 N.M. 728, 918 P.2d 7, and Silva v. Town of Springer, 1996-NMCA-022, 121 N.M. 428, 912 P.2d 304. We note, however, that none of these cases involve the payment of retirement benefits or health insurance benefits. Moreover, these cases do not involve the revision or repeal of a statutory provision, but instead involve the failure of governmental entities to abide by the terms of existing policies and regulations. See Handmaker, 1999-NMSC-043, ¶ 6, 128 N.M. 328, 992 P.2d 879 (observing that the fired professor claimed that his firing "violated the faculty handbook and internal policies and procedures and that removing him from his administrative position without just cause constituted a breach of his express employment contract"); Garcia, 1996-NMSC-029, ¶ 3, 121 N.M. 728, 918 P.2d 7 (stating that the plaintiff asserted that he was "demoted . . . in violation of the Policy, which requires a showing of good cause and notice and opportunity to improve performance, and thereby breached the employment contract"); Silva, 1996-NMCA-022, ¶ 6, 121 N.M. 428, 912 P.2d 304 (involving claims that town failed to abide by ordinance describing the plaintiffs' "positions as classified employees and preclud[ing] their dismissal, except in accordance with the terms and procedures of the ordinance"). Lastly, we note that both Garcia and Handmaker involve personnel policies promulgated by government agencies and do not involve statutes or ordinances. As such, we believe that the reasoning in both cases is distinguishable from the case at bar. Cf. Whittington v. Dep't of Pub. Safety, 2004-NMCA-124, ¶ 12, 136 N.M. 503, 100 P.3d 209 (distinguishing Pierce and Whitely on the grounds that both cases involved statutes whereas the case at bar involved "policies and procedures promulgated by the Department and in effect during the period for which compensation is claimed").
{19} Plaintiffs further assert that because the City manager referred to the personnel policy ordinance as an "employee contract" and because the policy provides that its rules "serve as conditions of employment for all employees," there is a factual question as to whether an implied contract exists. We do not agree that the City manager's representations are sufficient to constitute a question of fact as to the existence of implied contract, particularly since changes to the personnel policy may only be effected upon majority vote of the City Council. Moreover, we believe the fact that the personnel rules expressly serve as conditions of employment does not in itself create a contract, but instead merely announces that its rules are simply City policies "that the City intends to carry out until such time as the city council wishes to change those policies." Unterschuetz, 281 Ill.Dec. 367, 803 N.E.2d at 994.
{20} Further, even if Plaintiffs' or the dissent's arguments make our foregoing analysis open to some question, our rules of statutory construction mandate that in the context of determining whether a statute or ordinance creates private contractual rights, we "resolve any uncertainty in favor of finding no contract." Pierce, 1996-NMSC-001, ¶ 30, 121 N.M. 212, 910 P.2d 288. Thus, even if the language of Section 629 can be construed as ambiguous or unclear with respect to the creation of contractual rights, we must resolve that ambiguity in favor of the City. See Pierce, 1996-NMSC-001, ¶ 30, 121 N.M. 212, 910 P.2d 288. As such, we hold that Plaintiffs did not have a contractual right to the lifetime reimbursement of retiree health insurance premiums.
{21} Nor do we believe that Section 629 conferred a vested right to retiree health insurance benefits. Vesting "is substantially a property right, and may be created either by common law, by statute, or by contract." Rubalcava v. Garst, 53 N.M. 295, 298, 206 P.2d 1154, 1156 (1949) (internal quotation marks and citation omitted). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement *960 to it." Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), limited on other grounds by Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Once a vested right has been created, "and has become absolute, it is protected from the invasion of the [l]egislature by those provisions in the Constitution which apply to such rights." Pierce, 1996-NMSC-001, ¶ 17, 121 N.M. 212, 910 P.2d 288 (internal quotation marks and citation omitted).
{22} As recognized by a case relied on by Plaintiffs, there are several different approaches to the question of whether vested rights have been created in any given case. See Poole v. City of Waterbury, 266 Conn. 68, 831 A.2d 211, 222 (2003). According to the court in Poole, "[s]ome courts impose a presumption that there is no vesting in the absence of a written, unambiguous expression of intent to do so, whereas others impose a presumption in favor of vesting if there is some ambiguity in the language conferring the benefit." Id. (citing cases). Once again, we believe our analysis in the present case is guided by Pierce. In Pierce, our Supreme Court recognized that like contractual rights, a statute or ordinance will only be found to confer vested rights where its language is clear and unambiguous. 1996-NMSC-001, ¶ 18, 121 N.M. 212, 910 P.2d 288; see also Sengpiel v. B.F. Goodrich Co., 156 F.3d 660, 667 (6th Cir.1998) ("Because vested benefits are forever unalterable, and because employers are not legally required to vest them, . . . the intent to vest [welfare benefits] must be found in the plan documents and must be stated in clear and express language." (internal quotation marks and citations omitted)). We therefore believe that our courts follow the first line of cases cited in Poole, i.e., we "impose a presumption that there is no vesting in the absence of a written, unambiguous expression of intent to do so." 831 A.2d at 222. With this presumption in mind, we turn to the pertinent sections at issue.
{23} We observe initially that, contrary to Plaintiffs repeated assertions, the mere fact that Plaintiffs' received retiree health insurance benefits upon retirement "does not indicate that the benefits become vested for life at the moment of retirement." Howe v. Varity Corp., 896 F.2d 1107, 1110 (8th Cir.1990), aff'd, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); accord. Jones v. Am. Gen. Life & Accident Ins. Co., 370 F.3d 1065, 1070-71 (11th Cir.2004); Williams v. Caterpillar, Inc., 944 F.2d 658, 666-67 (9th Cir.1991); Hamilton v. Gibson County Util. Dist., 845 S.W.2d 218, 223 (Tenn.Ct.App. 1992). Rather, Plaintiffs must show that the City clearly and unambiguously intended to create a lifetime entitlement to reimbursement of retiree health insurance premiums. See Pierce, 1996-NMSC-001, ¶ 18, 121 N.M. 212, 910 P.2d 288. We conclude that Plaintiffs did not satisfy this burden.
{24} Turning next to the language of the ordinance itself, we observe that there is no express language conferring a vested right to retiree health insurance benefits. The ordinance does not state that benefits will be provided for the lifetime of the retirees nor does it otherwise use "vesting" language. See id. ¶¶ 35-38. We believe that the lack of clear and unambiguous language regarding vested rights indicates that the City did not intend to create vested rights in the reimbursement of retiree health insurance premiums. See id. ¶ 18.
{25} Additionally, we observe that the fact that the ordinance may have provided requirements for eligibility for retiree health benefits does not in itself establish a vested right to such benefits. See Davis v. Wilson County, 70 S.W.3d 724, 728 (Tenn.2002) (concluding that although city resolutions provided eligibility requirements for benefits, the resolutions did not create vested rights to such benefits as there was "no clear and express language stating that the health care benefits were intended to vest or could never be amended or terminated"). This is particularly true where, as in the present case, the ordinance expressly allows for modification or alteration of its provisions. See id.; see also Gable v. Sweetheart Cup Co., Inc., 35 F.3d 851, 856 (4th Cir.1994) (holding that an "express reservation of the company's right to modify or terminate the participants' benefits is plainly inconsistent with any alleged intent to vest those benefits."); DeClue v. *961 City of Clayton, 246 Ga.App. 487, 540 S.E.2d 675, 679 (2000) ("Where the contract terms themselves provide for subsequent amendment, modification, or termination, no `vested' right under the contract is created."). As such, we do not believe the Section 629 conferred vested rights.
{26} We further conclude that Plaintiffs reliance on Poole is misplaced. In Poole, retired firefighters sued to invalidate the City of Waterbury's decision to reduce certain healthcare benefits provided to retirees. 831 A.2d at 216-18. The court ultimately held that the retirees had "a vested right to medical benefits that survived the expiration of the collective bargaining agreements" under which they retired. Id. at 230. As recognized by the court in Poole, however, "case law from other states reflects a mixed record of success for retired municipal employees asserting vested rights to medical benefits, principally dependent on whether the right alleged arises under a collective bargaining agreement." Id. at 221 n. 10 (emphasis added). Unlike Poole, the case at bar does not involve a collective bargaining agreement. We therefore conclude that Poole is distinguishable from the case at bar.
{27} Borrowing a string cite from Duncan v. Retired Public Employees of Alaska, Inc., 71 P.3d 882, 888 n. 23 (Alaska 2003), Plaintiffs argue that "[t]here are numerous state court holdings that medical benefits are part of vested retirement benefits." Plaintiffs make no attempt, however, to explain how these various cases are applicable to the case at bar. Our review of these cases reveals that many of them involve statutory provisions that differ from the provisions at issue in the present case. Moreover, our Supreme Court's discussion of vested rights in Pierce differs significantly from the approaches taken by the various courts in these cases. As such, in the absence of any evidence of clear and unambiguous intent by the City to create vested rights in the lifetime reimbursement of health insurance premiums, we decline to imply such rights in the present case.
{28} Lastly, we disagree with Plaintiffs' claim that their right to lifetime reimbursement of health insurance premiums is an accrued benefit. We do not believe that the fact that Plaintiffs worked for the City until their retirement necessarily makes the payment of health insurance premiums upon retirement an "accrued benefit" where there is no evidence to suggest that Plaintiffs made monetary contributions to the plan during their employment or that the amount of health insurance benefits Plaintiffs received were in any way related to the number of years of service the retiree performed. See, e.g., Whitely, 115 N.M. at 310-11, 850 P.2d at 1013-14 (distinguishing between earned annual leave, which was accrued at a specific rate during the employee's employment, and the rate at which annual leave was earned, which is not an accrued benefit but merely a statutory term); Studier, 698 N.W.2d at 358 (defining "accrued" benefits "to be benefits of the type that increase or grow over time-such as a pension payment or retirement allowance that increases in amount along with the number of years of service a public school employee has completed," and concluding that "[h]ealth care benefits, however, are not benefits of this sort"). But see Duncan, 71 P.3d at 888 (holding that "accrued benefits" include "all retirement benefits that make up the retirement benefit package that becomes part of the contract of employment when the public employee is hired, including health insurance benefits"). Although Plaintiffs do cite to a number of cases from other jurisdictions suggesting that retiree health care benefits may be "accrued benefits," we do not find those cases persuasive, particularly in light of our Supreme Court's holdings in Whitely and Pierce. We therefore conclude that Plaintiffs have no contractual or vested rights to the lifetime reimbursement of health insurance premiums.
Promissory Estoppel
{29} Plaintiffs lastly contend that because they relied to their detriment on the City's promise to provide reimbursement for health care insurance premiums, the City should be estopped from terminating such benefits. We disagree.
{30} Initially, we observe that it is unclear whether promissory estoppel may be applied against the City. See Campos de Suenos, Ltd. v. County of Bernalillo, 2001-NMCA-043, *962 ¶ 32, 130 N.M. 563, 28 P.3d 1104 ("Even were we to assume that promissory estoppel could overcome governmental immunity after Trujillo [v. Gonzales, 106 N.M. 620, 621-22, 747 P.2d 915, 916-17 (1987)], a proposition that we seriously doubt, it would fail here."). We further observe that in a case relied on by the court in Pierce, the Supreme Court of Connecticut recognized the following:
[t]he promissory estoppel approach, in focusing attention on the reasonable expectations of the employee, ignores the distinction traditionally made between private and public entities in determining the existence of contractual rights and obligations. "[C]ourts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel."
Pineman, 488 A.2d at 809 (quoting Kizas v. Webster, 707 F.2d 524, 535 (D.C.Cir.1983)).
{31} Moreover, even assuming that promissory estoppel is applicable, we believe that Plaintiffs are unable to establish its elements as a matter of law. The elements of promissory estoppel are as follows:
(1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.
Strata Prod. Co. v. Mercury Exploration Co., 121 N.M. 622, 628, 916 P.2d 822, 828 (1996). We observe that "[o]ne who contracts with a municipality is charged with knowledge of its limitations and restrictions in making contracts." Keeling v. City of Grand Junction, 689 P.2d 679, 680 (Colo.Ct.App.1984). As previously mentioned, "[w]e presume that statutes establish current public policy subject to legislative revision rather than creating either contractual or vested rights." Pierce, 1996-NMSC-001, ¶ 48, 121 N.M. 212, 910 P.2d 288. As such, Plaintiffs could not have reasonably relied on the ordinance. See Colorado Springs Fire Fighters Ass'n, Local 5 v. City of Colorado Springs, 784 P.2d 766, 774 (Colo.1989). We therefore decline to apply estoppel in the present case.
CONCLUSION
{32} For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the City.
{33} IT IS SO ORDERED.
I CONCUR: CELIA FOY CASTILLO, Judge.
MICHAEL E. VIGIL, Judge (dissenting).
VIGIL, Judge (dissenting).
{34} The majority opinion allows a government employer who clearly and unambiguously contractually obligates itself to provide a retirement benefit to its employees to renege on its contract under the guise that when it made the promise, it was merely establishing a public policy that was subject to subsequent legislative revision. This relegates government employees to second class status who, unlike employees of private employers, cannot rely on a contractual obligation of the government as an employer to provide an employment benefit. I do not agree and therefore dissent.
{35} When the City Council adopted Section 629, it clearly and unambiguously expressed its intent to be contractually obligated to provide Retirees with group health insurance coverage. An express contract was created when the City offered each Retiree group health insurance coverage, each Retiree accepted the City's offer, and each party provided consideration. The City could not then unilaterally terminate the group health insurance coverage which each Retiree had a contractual and vested right to continue receiving. Further, the majority's reliance on Section 1402 is misplaced because the issue in this case is whether the City could completely terminate, rather than amend, Retirees' group health insurance coverage.
{36} Whitely clearly states that contractual rights between a legislative body and employees *963 may be established if "the language of the statute and the circumstances . . . manifest a legislative intent to create private rights of a contractual nature." 115 N.M. at 312, 850 P.2d at 1015 (internal quotations marks and citation omitted); see Hammond v. Temp. Comp. Review Bd., 473 A.2d 1267, 1272 (Me.1984) (explaining that although public employees, generally, do not have contractual rights, contractual rights may develop based on the "agency's words, actions, rules, or `mutually explicit understandings'" (citations omitted)). The majority concludes, and I agree, that while this case involves a municipal ordinance rather than a state statute, the analysis is the same.
{37} A plain reading of Section 629 clearly reflects the City Council's intent to make a binding contractual offer. Section 629 is unambiguously phrased in contractual language: "The City of Portales shall offer employees upon their retirement the option of continuing their group health and life insurance coverage through the City's group plan, provided they are enrolled in the group health plan at least one year prior to retirement." (Emphasis added.) "The plain language of [an ordinance] is the primary indicator of legislative intent." Orcutt v. S & L Paint Contractors, Ltd., 109 N.M. 796, 798, 791 P.2d 71, 73 (Ct.App.1990). By stating its intent to offer Retirees group health insurance coverage, the City Council expressed its desire to enter into a contract. See Talbott v. Roswell Hosp. Corp., 2005-NMCA-109, ¶ 15, 138 N.M. 189, 118 P.3d 194 (explaining that an offer is an expression of a willingness to enter into a contract).
{38} Each Retiree accepted the City's offer. They did so when they signed up to receive health insurance coverage upon their retirement and began receiving coverage. See Orcutt, 109 N.M. at 798, 791 P.2d at 73 (stating that acceptance illustrates an agreement to the terms of the contract).
{39} The parties each provided consideration for the contract. "`Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do.'" Talbott, 2005-NMCA-109, ¶ 16, 138 N.M. 189, 118 P.3d 194 (quoting Heye v. Am. Golf Corp., 2003-NMCA-138, ¶ 12, 134 N.M. 558, 80 P.3d 495); see Smith v. Village of Ruidoso, 1999-NMCA-151, ¶ 33, 128 N.M. 470, 994 P.2d 50 ("Consideration is the bargained-for exchange between the parties."); Restatement (Second) of Contracts § 73 (1981). The City's promise was to provide Retirees group health insurance coverage upon their retirement. See Bender v. Bender, 258 Conn. 733, 785 A.2d 197, 210 (2001) (noting that "employers frequently use lucrative retirement packages in lieu of additional salary to attract and retain desirable employees" (internal quotation marks and citation omitted)). Employers often use the promise of retiree health insurance as an incentive to hire and retain employees or are able to pay employees a lower salary because of the guarantee of health benefits upon retirement. See Poole, 831 A.2d at 223 ("[T]he promise of health insurance benefits at retirement may be a significant inducement in determining employment."); Cal. League of City Employee Ass'ns v. Palos Verdes Library Dist., 87 Cal.App.3d 135, 150 Cal.Rptr. 739, 742 (Ct.App.1978) (finding salary increases and promised vacation "were important to the employees, had been an inducement to remain employed with the district, and were a form of compensation which had been earned by remaining in employment"). The consideration provided by Retirees was to remain employed with the City until their retirement. The City does not dispute that Retirees continued to work for the City in part based upon the City's promise to provide group health insurance coverage, and at least two Retirees turned down higher paying jobs and continued to work with the City because of the promised health insurance coverage benefit upon retirement.
{40} Finally, the parties expressed "an objective manifestation of mutual assent . . . to the material terms of the contract." Pope v. Gap, Inc., 1998-NMCA-103, ¶ 11, 125 N.M. 376, 961 P.2d 1283. "The manifestation of mutual assent to an exchange ordinarily takes the form of an offer by one party followed by an acceptance by the other party." Orcutt, 109 N.M. at 798, 791 P.2d at 73. There was mutual assent when the contract was formed. Both parties understood that *964 the City would provide Retirees health insurance coverage. The Retirees signed up the coverage, and the City provided the coverage and budgeted for it. See id. at 798, 791 P.2d at 73 (explaining that "[a]cceptance of an offer is a manifestation of assent to the terms [of the offer]") (citing Restatement of Contracts (Second) § 50 (1981)).
{41} The majority acknowledges that if the City Council had wanted to, it could have created a contractual right by using express contractual terms. I respectfully submit that the City Council did just that in this case. The fact that the City Council did not use the contractual language suggested by the majority should make no difference simply because the retirement benefit was promised by a public employer and not a private employer. A city employee should be treated no differently from a private employee who has been clearly and unambiguously offered a contractual right to receive group health insurance coverage upon retirement. I reject any suggestion to the contrary. Retirees have every right to have their contractual agreement enforced by the courts.
{42} The majority relies heavily on Pierce, 1996-NMSC-001, 121 N.M. 212, 910 P.2d 288, to support its position that the City Council did not intend to enter a binding contract with Retirees. This case, however, is easily distinguished from Pierce. Unlike Section 629, the state statute in Pierce lacked language expressly creating private contractual rights and, in fact, the statute "expressly stated that [with one exception] it was not granting any contractual rights." Pierce, 1996-NMSC-001, ¶¶ 31, 39, 121 N.M. 212, 910 P.2d 288; see Colorado Springs Fire Fighters Assoc., Local 5, 784 P.2d at 773 (holding that the ordinance lacked contractual language and did not require city employees' acceptance to become effective). The Pierce Court therefore concluded the legislature did not intend to create express contractual rights with the plaintiffs. That is not the case before us because Section 629 contains the requisite contractual language.
{43} Furthermore, in Pierce, the legislature repealed the tax exemption for state retirement benefits, but it did not terminate the benefits themselves. 1996-NMSC-001, ¶ 2, 121 N.M. 212, 910 P.2d 288. In the case before us, no ordinance was passed which terminated the group health insurance coverage of Retirees. Significantly, the City Council voted against a resolution in August 2005 stating that the health insurance benefit provided by Section 629 was terminated, canceled, and rescinded. The most that can be said when the City Council deleted Section 629 from the 2005 personnel ordinance in May 2005 is that it eliminated the benefit only for employees who had not yet retired. The City Council action could not eliminate the benefit to Retirees because the City was already contractually bound to provide it.
{44} I do not dispute that the City Council like other legislative bodies, has the authority to make policy that can be amended. However, when it adopted Section 629, the City Council did not merely create policy. Instead, it stated a clear legislative intent to enter a contract with City employees to provide group health insurance coverage upon employees' retirement. By offering retiree health insurance coverage to its employees, the City was able to attract and retain them and partially defer compensating the employees until their retirement. See Int'l Union v. Yard-Man, Inc., 716 F.2d 1476, 1482 (6th Cir.1983) (explaining that retiree insurance benefits "are typically understood as a form of delayed compensation or reward for past services"); Gauer v. Essex County Div. of Welfare, 108 N.J. 140, 528 A.2d 1, 5 (1987) (concluding that "the reimbursement of health insurance premiums to long-standing employees was intended at least in part as compensation for extended tenure"); William J. Holloway & Michael J. Leech, Employment Termination Rights and Remedies 72-73 (2d ed.1993) (stating pensions and insurance "are recognized forms of deferred compensation"). I respectfully submit that legislation which contractually promises to convey an employment benefit is different from other legislation which reflects public policy decisions such as criminal statutes, zoning requirements, and taxes. These are core governmental issues and reflect changing policy decisions. However, contractual obligations of a governmental entity acting *965 as an employer do not stand on the same footing.
{45} Finally, I disagree with the majority that Retirees do not have a vested right to the group health insurance coverage. Vesting is "substantially a property right, and may be created either by common law, by statute, or by contract." Rubalcava, 53 N.M. at 298, 206 P.2d at 1156 (internal quotation marks and citation omitted). When the language is clear and unambiguous in a statute or ordinance, it may confer vested rights. Pierce, 1996-NMSC-001, ¶ 18, 121 N.M. 212, 910 P.2d 288. I have already expressed my view that Section 629 satisfies this requirement. However, the majority concludes that by virtue of Section 1402, which allows amendments, Retirees have no vested right to the group health insurance coverage. I disagree with this conclusion as well. Whether the City could amend the terms of the Personnel ordinance, such as changing the amount of the premium Retirees have to pay, is not before the Court in this case. The City did not amend the terms of Retirees' group health insurance coverage. Instead, the City altogether eliminated the health insurance coverage. Thus, the issue is whether the City could unilaterally terminate the contract in its entirety. The personnel ordinance does not reserve a right in the City to terminate its contract with Retirees. See Diehl v. Twin Disc, Inc., 102 F.3d 301, 308-09 (7th Cir.1996) (discussing a reservation clause that allowed the company to "change[ ] or discontinue[ ]" coverage; stating that if the employer "were permitted to `modify' coverage until it became all but nominal, the promise of lifetime benefits would begin to look rather illusory"); Helwig v. Kelsey-Hayes Co., 93 F.3d 243, 246 (6th Cir. 1996) (discussing an employee contract that reserved the right to "modify, suspend or terminate" the benefits described in the contract (internal quotation marks and citation omitted)); Emerling v. Village of Hamburg, 255 A.D.2d 960, 680 N.Y.S.2d 37, 38 (App. Div.1998) ("[W]hile there is elsewhere in the rules and regulations a provision making those rules and regulations subject to amendment, nowhere is the right to terminate the medical benefits of retirees expressly reserved.").
{46} The City's offer to Retirees, the acceptance of the offer by Retirees, and the mutual consideration created a contract between the City and Retirees. Further, the contract, in the language of Section 629, provides that coverage continues as long as Retirees remain eligible by paying their portion of the insurance premium on a timely basis to avoid a lapse in coverage. Once the contract was formed, the City was bound by the terms of the contract and could not unilaterally terminate the contract. In other words, Retirees have a vested right to the health insurance coverage as provided in Section 629. See Diehl, 102 F.3d at 306-07 (holding that, based on the language of the contract, retirees' rights had vested and that could not be terminated); Yard-Man, 716 F.2d at 1482 & n. 8 (holding that retiree "benefits are in a sense `status' benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained"; explaining that the union did not have to provide retiree health care benefits, but that once it chose to do so, it could not bargain away rights that had vested upon retirement and had become interminable); Hous. & Redevelopment Auth. of Chisholm v. Norman, 696 N.W.2d 329, 337 (Minn.2005) (holding that a public employer's promise in a collective bargaining agreement was enforceable, even though the collective bargaining agreement later expired, because the employee's benefit vested at the time she retired); Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 171 N.E.2d 518, 522 (1960) (holding that "[the retiree] having complied with all the conditions in his contract entitling him to retirement rights and having reached retirement age under the contract, his retirement rights became vested and [the employer] could not terminate his contract so as to divest him of such rights"); Schlosser v. Allis-Chalmers Corp., 86 Wis.2d 226, 271 N.W.2d 879, 889 (1978) ("Clearly, under our present economic system, an employer cannot offer a retirement system as an inducement to employment and, after an employee has accepted employment under such circumstances, withdraw or terminate the program after an employee has complied with all the conditions entitling him to retirement *966 rights thereunder." (internal quotation marks and citation omitted)).
{47} Having created a vested property interest in group health insurance coverage through Section 629, any action by the City that terminates, diminishes, or alters the value of the benefit must be compensated for by providing an equal or greater benefit. Pierce, 1996-NMSC-001, ¶ 54, 121 N.M. 212, 910 P.2d 288. Otherwise, the City will be taking property from Retirees without just compensation in violation of the New Mexico and United States constitutions. Id.; see N.M. Const. art. II, § 20; U.S. Const. amend. XIV. The effect of the majority opinion is to allow the City to take away the vested property right which Retirees have in their group health insurance coverage without having to pay just compensation.
{48} For the foregoing reasons I dissent. I would reverse the summary judgment in favor of the City and remand with instructions to enter summary judgment in favor of Retirees.