IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-023

Filing Date:  May 20, 2009

Docket No. 30,558

HILLREY BEGGS, individually, MELVINA LANCASTER CROCKETT,
individually, JOSE M. GUTIERREZ, individually, ARLY V. HAMNER,
individually, PETE O. LUCERO, individually, MIGUEL S. LUCERO,
individually, BETTY L. OLSON, individually, PEGGY NEWBANKS,
individually, RALPH PELLICOTT, individually, MARCARIO SAIZ,
individually, CURTIS WAGNER, individually, GARY WATKINS,
individually, ALAN WOFFORD, individually, and JIM WOOD, individually,

        Plaintiffs-Petitioners,

v.

CITY OF PORTALES, a municipality existing under the laws of the
State of New Mexico,

        Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Robert S. Orlik, District Judge

Eric D. Dixon, Attorney and Counselor at Law, P.A.
Eric D. Dixon
Portales, NM

for Petitioners

Doerr & Knudson, P.A.
Stephen E. Doerr
Randy J. Knudson
Portales, NM

Hinkle, Hensley, Shanor & Martin, L.L.P.
Richard E. Olson
Rebecca N. Johnson
Roswell, NM

1

for Respondent

## OPINION

**DANIELS, Justice.**

**{1}** This case requires us to analyze the legal consequences of a written personnel policy provision enacted by a city ordinance that required the City of Portales ("the city") to offer to its retiring employees the option of continuing their health care coverage under the city's group plan at the active employee premium reimbursement rate. The Petitioners ("Retirees") accepted the city's offers at the time each of them retired, before the city council enacted an ordinance deleting the retirement insurance provision from the city's "Personnel Policy Manual" ("the Manual").

**{2}** The question before us is whether the city is correct in its position that the later change in the Manual necessarily extinguished any enforceable rights Retirees may continue to have under the terms that were applicable when they retired and accepted the city's offers. We hold that the circumstances of this case present genuine issues of material fact as to whether the city's offers and Retiree's acceptances constituted binding contracts, and we reverse the district court's entry of summary judgment in favor of the city.

## I.    BACKGROUND

**{3}** In 1994, the Portales city council enacted an ordinance adopting a comprehensive personnel policy manual governing its relationships with its employees. Section 629 of the Manual, "Retiree Health Care Insurance," provided:

> The City of Portales shall offer employees upon their retirement the option of continuing their group health and life insurance coverage through the City's group plan, provided they are enrolled in the group plan at least one year prior to retirement. The cost of the insurance for the retiree shall be the same as the cost for regular employees. If the City is paying 75% of the premium for employees, the City shall pay 75% of the premium for the retiree and shall be budgeted out of the department from which the employee retires. Retirees shall be responsible for paying their portion of the premium on a monthly, timely basis, in order to avoid the lapse of their policy coverage.
>
> Conditions of the policy coverage shall apply in accordance with the retiree's age and circumstances on an individual basis.

Between 1995 and 2000, nine of the fourteen Retirees retired and elected to accept the city's offer to continue receiving health care benefits and reimbursements on the same terms as active employees.

2

**{4}** In 2000, the city council adopted an ordinance opting into the New Mexico Retiree Health Care Act, NMSA 1978, §§ 10-7C-1 to -19 (1990) ("NMRHCA"), an act providing an alternative retiree health care benefit program for government employers and employees, which the Portales city council expressly had rejected for its employees in 1990. Even after the city's adoption of NMRHCA, the nine Retirees who had already retired continued receiving health coverage and reimbursements from the city under the Section 629 personnel policy option, which had not yet been repealed. Over the next several years, the remaining five Retirees retired and also accepted the city's still-continuing offers to receive health care coverage under its still-applicable terms.

**{5}** In 2005, city officials began to reconsider Retirees' rights to the reimbursement rates embodied in Section 629, in light of increasing health care costs and the city council's provision in 2000 of alternative retiree health care benefits through NMRHCA. In March, the city manager and the city's finance and administration committee agreed that Retirees should continue receiving coverage and reimbursements under the terms of Section 629. In May, the city council adopted a new ordinance that modified the Manual by deleting Section 629's health care reimbursement option entirely.

**{6}** After elimination of the Section 629 policy, Retirees met with the city attorney and others regarding the continuing rights of those who had previously accepted the city's Section 629 health insurance offer. After no consensus was reached, the city attorney submitted a resolution to the city council that would have interpreted its 2000 ordinance opting into NMRHCA as having rescinded Section 629 and as having terminated the rights of any retirees to its health care reimbursement provisions. The city council, in a divided vote, refused to adopt the resolution. Despite the city council's rejection of the resolution, the city manager notified Retirees that the city would discontinue reimbursing their health care insurance premiums on the terms contained in former Section 629 and offered to Retirees at the time of their retirement.

**{7}** Retirees filed suit in the district court of Roosevelt County to determine and enforce their rights. The district court granted summary judgment against Retirees on the ground that no vested or contractual rights could have been created by the terms of the ordinance adopting the health care policies.

**{8}** The Court of Appeals affirmed the grant of summary judgment in a divided opinion. *Beggs v. City of Portales*, 2007-NMCA-125, ¶¶ 32, 34, 142 N.M. 505, 167 P.3d 953. The two-judge majority, as had the district judge, focused on the fact that the retiree health insurance provisions of the Manual had been enacted through an ordinance, and relied on a body of law that rejected implications of enforceable private contractual rights from general governmental policies embodied in statutes. *Id.* ¶¶ 9-12. The dissenting judge concluded that the city had in fact entered into a specific binding contract with Retirees for provision of health care benefits for the duration of their retirement, and that not only should the grant of summary judgment for the city be reversed, but summary judgment should be

3

entered in favor of Retirees. *Id.* ¶¶ 35, 48.

**{9}** This case is now before us on Retirees' petition for writ of certiorari. *Beggs v. City of Portales*, 2007-NMCERT-009, 142 N.M. 716, 169 P.3d 409.

## II. STANDARD OF REVIEW

**{10}** On appeal, the grant of a motion for summary judgment is a question of law that is reviewed de novo. *Tafoya v. Rael*, 2008-NMSC-057, ¶ 11, 145 N.M. 4, 193 P.3d 551. Summary judgment is appropriate where there is no evidence raising a reasonable doubt that a genuine issue of material fact exists. *Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 9, 124 N.M. 633, 954 P.2d 65. On the other hand, where any genuine controversy as to any material fact exists, a motion for summary judgment should be denied and the factual issues should proceed to trial. *Gardner-Zemke Co. v. State*, 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). To that end, "[a] summary judgment motion is not an opportunity to resolve factual issues, but should be employed to determine whether a factual dispute exists." *Id.*

**{11}** In employing this test, all reasonable inferences from the record are construed in favor of the non-moving party. *Garcia v. Underwriters at Lloyd's, London*, 2008-NMSC-018, ¶ 12, 143 N.M. 732, 182 P.3d 113; *see State v. Intigon Indem. Corp.*, 105 N.M. 611, 612, 735 P.2d 528, 529 (1987) (stating that courts are "obliged to view the pleadings, affidavits and depositions in the light most favorable to the party opposing the [summary judgment] motion."). "If there are [any] reasonable doubts, summary judgment should be denied." *Koenig v. Perez*, 104 N.M. 664, 666, 726 P.2d 341, 343 (1986) (internal quotation marks, citation, and emphasis omitted).

## III. DISCUSSION

**{12}** There are two separate lines of authority that have been argued to be applicable to this case, and each leads to different analyses and different potential results. The city relies on a line of authority that rejects finding personal contractual or vested rights in general statutory policies. *See Whitely v. New Mexico State Pers. Bd.*, 115 N.M. 308, 312, 850 P.2d 1011, 1015 (1993) (rejecting a finding of any continuing right to future accruals of annual leave at previous statutory rates, because "[c]ontractual rights are not created by statute unless the language of the statute and the circumstances . . . manifest a legislative intent to create private rights of a contractual nature enforceable against the State" (internal quotation marks and citation omitted)); *Pierce v. State*, 1996-NMSC-001, ¶ 47, 121 N.M. 212, 910 P.2d 288 (finding no private rights of retirees to tax exemptions on retirement income after a prior tax exemption statute was repealed, on the theory that "the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state" (internal quotation marks and citation omitted)).

**{13}** Retirees, on the other hand, point to decisions recognizing that government

4

employees can rely on the terms of employment contracts with their governmental employers, including implied-in-fact employment contracts based on provisions in personnel manuals and on other representations and conduct of the parties. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 11, 121 N.M. 728, 918 P.2d 7 ("In New Mexico, a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlines." (internal quotation marks and citation omitted); *Whittington v. State Dep't of Pub. Safety*, 2004-NMCA-124, ¶ 1, 136 N.M. 503, 100 P.3d 209 (finding that a state police employee manual and its "policies and procedures governing the employment of state police officers create an implied contract regarding terms of employment . . . .").

**{14}** We conclude that this case is controlled by *Garcia* and *Whittington*, and not by *Pierce* and *Whitely*. The general policy provisions in the statutes in *Pierce* and *Whitely* did not purport to create an employment manual that would control the terms of the employer-employee relationship, as this Court found existed in *Garcia*. 1996-NMSC-029, ¶ 11. In *Whitely*, the judicial employees alleged that the very terms of the statute at issue, without more, had given them vested rights to future accruals of personal leave, even after the statutory rate was changed. 115 N.M. at 310, 850 P.2d at 1013. In *Pierce*, not only were the tax exemption provisions of the statutes relied on for alleged contractual or vested rights not contained in an employee handbook, they were also "not contained within the [statutory] provisions defining the substantive rights of employees to receive benefits." 1996-NMSC-001, ¶ 47. Retirees in this case, however, assert rights based not simply on the policies expressed in an ordinance alone, but specifically on contractual rights based on the Manual, the conduct of the parties, and various oral and written representations, allegedly evidencing a binding contractual offer and acceptance.

**{15}** The record contains substantial evidentiary support for Retirees' contractual claims, including evidence to support findings (1) that the city council had specifically authorized the comprehensive terms of its ordinance to be considered a "Personnel Policy manual . . . to inform employees of policies that affect their employment with the City of Portales" and to "ensure that the personnel system provides . . . policies and procedures for . . . fringe benefits . . . retirement, and other related activities"; (2) that employees were required to be provided with, and to sign acknowledgments of receipt of, the Manual; (3) that employees were bound by terms of the Manual; (4) that the city itself felt bound to comply with the terms of its Manual; (5) that city officials made representative admissions by statements and conduct that the city was obligated to continue paying health insurance premiums for those Retirees who had accepted the city's offer to do so after they had met the requirements of the ordinance existing at the time of their retirements; and (6) that city officials made representative admissions that provisions of the Manual became terms of an "employee contract" and that Retirees had a "vested interest" in continued health insurance benefits.

**{16}** The city's course of conduct, as alleged over a period of many years, easily distinguishes the present case from *Pierce* and *Whitely*. Here, a jury could reasonably

conclude that the city not only promised to make an offer for a contract, but actually engaged in a course of conduct over an extended period of time, including use of its employee manual, in which the city both made and performed contractual commitments to its employees, thereby obligating itself into the future. In contrast, *Pierce* and *Whitely* arose solely from enactments of our state legislature that concerned appropriations and taxation—core functions of state sovereignty for which no law-making body can bind its successor.

**{17}** New Mexico case law has emphasized the importance of precisely that kind of evidence in determining the existence of contractual obligations in public employment contexts. *See Garcia*, 1996-NMSC-029, ¶ 10 ("Whether an implied employment contract exists is a question of fact, and it may be 'found in written representations[,] . . . in oral representations, in the conduct of the parties, or in a combination of representations and conduct.'") (quoting *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 669, 857 P.2d 776, 780 (1993)); *Campos de Suenos, Ltd. v. County of Bernalillo*, 2001-NMCA-043, ¶ 27, 130 N.M. 563, 28 P.3d 1104 (distinguishing government employment contracts from other forms of government contracts: "As a practical matter, most employment agreements in the public sector are implied-in-fact, rooted in the conduct of the parties and in a maze of personnel rules and regulations, as well as employee manuals that apply generically to all employees"). *Garcia* emphasized the comprehensive nature of the written personnel policies in finding them sufficient to create contractual obligations by a governmental employer. 1996-NMSC-029, ¶ 13. Similarly, in this case, the Manual exhaustively addressed "all phases of Personnel Administration" and was meant to "serve as conditions of employment for all employees of the City of Portales." It covered every aspect of the employment relationship between the city and its employees, including sections relating to the Manual's mission to provide for consistent application of personnel policies, effects of separate labor relations contracts, recruitment, probationary periods, transfer, promotion, holiday pay, salary increases, travel expenses, vacation and sick leave, disciplinary procedures, termination, and grievance procedures. As this Court said in *Garcia*, "if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it." *Id.* (citation omitted). Not surprisingly, the city has referred us to no authority which has ever held that a governmental employer's contractual obligations created through an employment manual may be ignored simply because the manual was initially adopted through an ordinance. We see no principled reason to create such an exception here. In fact, the official endorsement of the city's governing body should provide additional safeguards against unintentional or unauthorized incurring of contractual obligations by the city.

**{18}** In arguing against any finding of contractual or vested rights, the city points to a number of factors that would be inconsistent with the creation of the contractual rights Retirees are seeking to enforce. One of those is that the Manual and its creating ordinance provided that "[n]othing shall restrict or prohibit the City Council from making changes in this manual as it determines necessary at any time." Another is the argument that "it makes no sense that all retirees [who satisfied the Manual's minimum one-year premium payment

requirement before retiring] would receive the same benefit regardless of their years of service, and that they would receive it for life." While those arguments may be relevant, admissible, and perhaps even ultimately successful in persuading a jury that the city in fact neither intended to nor did enter into the contracts alleged by Retirees, they do not foreclose a fact finder's decision that the city actually did enter into such contracts, in light of the totality of the evidence that may be presented at trial.

{19}     With regard to the city's reliance on the right to amend its ordinance creating the Manual, it is important to note that nothing in either the Manual or the ordinance contained language stressing that no contractual rights would be created between the city and its employees during the time the Manual's provisions were in effect, nor that later amendments would be argued to void obligations that had been incurred before the changes.[1]

{20}     Moreover, it is important to remember that this case does not involve simply the interpretation of a change of benefits in an ordinance, it involves also the terms of a personnel manual and statements and actions of the parties surrounding the alleged formation of a contract at the time Retirees allege that they accepted an offer made by their employer in connection with their retirement. As this Court observed in *Cockrell v. Board of Regents of New Mexico State University*, "employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract . . . ." 2002-NMSC-009, ¶ 26, 132 N.M. 156, 45 P.3d 876 (alteration in original) (internal quotation marks and citations omitted). However, even where a personnel manual purports to disclaim any intentions of forming contractual obligations enforceable against an employer, a fact finder may still look to the totality of the parties' statements and actions,

---

[1]The New Mexico Retiree Health Care Act contains language that clearly does not create contractual rights:

> The legislature declares that the expectation of receiving future benefits may be modified from year to year in order to respond to changing financial exigencies, but that such modification must be reasonably calculated to result in the least possible detriment to the expectation and to be consistent with any employer-employee relationship established to meet that expectation. The legislature does not intend for the Retiree Health Care Act to create trust relationships among the participating employees, retirees, employers and the authority administering the Retiree Health Care Act nor does the legislature intend to create contract rights which may not be modified or extinguished in the future; rather the legislature intends to create, through the Retiree Health Care Act, a means for maximizing health care services returned to the participants for their participation under the Retiree Health Care Act.

NMSA 1978, § 10-7C-3(B) (1990).

including the contents of a personnel manual, to determine whether contractual obligations were created. *Id.*

**{21}** The fundamental dispute in this case relates to exactly what, if anything, the city and Retirees contractually agreed to at the time Retirees retired and accepted the city's offer that was authorized by Section 629 of the Manual, in its direction that the city "shall offer" retiring employees certain health insurance benefits. The city did not appear to dispute Retirees' evidentiary showings that there was an offer of health benefits of some kind by the city at the time of their retirement, that Retirees manifested their acceptance, that there was consideration in the form of their required participation in the health plan for the minimum one-year period before retirement, in declining other employment and staying employed by the city until retirement, and in paying Retirees' portions of the premiums after retirement. However, the city and Retirees vigorously dispute whether the offer made to Retirees and accepted by them was for permanent health benefits or was for monthly benefits only during the time the city chose to continue providing them, and both sides point to substantial evidentiary support for their respective theories.

**{22}** We are persuaded that this record shows that the evidence submitted in opposition to the city's motion for summary judgment, while not conclusive either way, was sufficient to show the existence of genuine issues of material fact regarding the existence of contractual rights on behalf of Retirees to continue receiving health insurance benefits at the rate they allege they and the city agreed upon at the time of their retirement. Those disputed factual issues are inappropriate for determination by summary judgment, and they should be submitted to a jury. "Reviewing this evidence in the light most favorable to [Retirees], we conclude that [Retirees are] entitled to have the factual issue of whether an implied contract exists resolved by a fact-finder at a trial on the merits." *Gormley v. Coca-Cola Enters.*, 2004-NMCA-021, ¶ 21, 135 N.M. 128, 85 P.3d 252 (filed 2003) (holding summary judgment improper, even where employer and employee "essentially agree[d] on the conversation giving rise to the alleged implied contract" because finding an implied-in-fact contract is a factual question meant for the jury). The district court therefore erred in granting summary judgment, and the Court of Appeals majority erred in affirming it.

**{23}** Plaintiffs also relied on a theory of promissory estoppel in support of their complaint and in opposition to the city's summary judgment motion in the district court. The district court did not separately address that theory at all in relying on *Pierce* and *Whitely* in granting summary judgment in favor of the city. The Court of Appeals majority addressed the theory only briefly, holding that it did not have to decide whether promissory estoppel would apply against a city, because its decision on the central contract issue led it to conclude that Retirees could not have legitimately relied on any promises or offers a city agent may have made that, as the court determined, were unauthorized by law. *Beggs*, 2007-NMCA-125, ¶¶ 15-16. The city addresses the promissory estoppel theory only in passing in its briefing in this Court, although Retirees continued to press the point. Given our determination that a jury could find that the city may in fact have made legally enforceable promises to Retirees, we therefore reverse on this issue as well. By doing so, we do not prejudge any

8

resolution of issues that potentially could have been, but were not, properly presented to this Court.

## IV.   CONCLUSION

**{24}**   Because we determine that there were genuine issues of material fact regarding whether a contract was formed and the scope of its terms, we hold that the district court's entry of summary judgment was error.  We reverse the Court of Appeals and the district court, and we remand this matter to the district court for further proceedings consistent with this opinion.

**{25}   IT IS SO ORDERED.**

 

_____

**CHARLES W. DANIELS, Justice**

**WE CONCUR**:

_____

**EDWARD L. CHÁVEZ, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

**Topic Index for *Beggs v. City of Portales*, No. 30,558**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| **CN** | **CONTRACTS** |
| CN-AM | Ambiguous Contracts |
| CN-FC | Formation of Contract |
| CN-IC | Implied Contract |
| CN-IN | Interpretation |
| CN-OF | Offer and Acceptance |

**EL**                  **EMPLOYMENT LAW**

EL-EP             Employer's Policies
EL-EE             Employer-Employee Relationship
EL-EC             Employment Contract
EL-HB            Health, Pension, and Retirement Benefits

**GV**                 **GOVERNMENT**

GV-PE            Public Employees

**JM**                 **JUDGMENT**

JM-SM            Summary Judgment